LESLIE E. ARMFIELD *vs.* FRANK N. McCLURE, INC. *et al.*

AUGUST 4, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is an action in assumpsit to recover on a written contract for services. It was heard in the superior court without a jury and resulted in a decision for the plaintiff in the sum of $1125.68. The case is before us on defendants' exception to that decision, all other exceptions being expressly waived.

Frank N. McClure of Mass., Inc. is the real defendant in this case and hereinafter will be referred to as the defendant. It is a corporation engaged in the food broker-age business, that is, taking orders from wholesalers for manufacturers of food products. The manufacturer billed the wholesaler and payment of commission to the broker was usually made when the manufacturer was paid. From May 1947 to February 20, 1948 the plaintiff was employed by defendant as a salesman covering all of Rhode Island and specified portions of Massachusetts and Connecticut. His compensation under the parties' oral agreement was 40 per cent of the gross commissions received by the defendant on all business from firms in that territory.

It appears in evidence that in February 1948 plaintiff informed defendant that he intended to go into business for himself, whereupon the latter persuaded him to remain in its employ under a written contract which is the subject

of controversy in this case. The contract, which was drawn by defendant, is dated February 20, 1948. After stating that defendant would pay plaintiff "40% of the gross brokerage" paid on all business from all firms in the above-mentioned territory, it then provides, among other things, that: "Frank N. McClure of Mass., Inc. agrees to guarantee Leslie Armfield the sum of $5,000 a year as long as he covers the territory in the manner it has been handled as to sales and obtains satisfactory results as prior to this agreement. Payment will be made monthly in the sum of $416.67. A statement will be furnished monthly as to the standing of the account of Leslie Armfield with Frank N. McClure of Mass., Inc., and a final accounting will be made of this account by January 15th each year. * * * This Agreement is to bind both parties and can only be terminated by failure of either party to their fulfillment of its terms or may be terminated by Leslie Armfield in written notice 90 days before January 1st of each year."

The plaintiff and Joseph N. McClure were the only witnesses in the case. McClure testified that shortly *after* the signing of the contract he asked plaintiff if he had told Marcus Jones, another employee, that he could take away all of defendant's business; that as plaintiff admitted making that statement McClure said to him: "Well * * * as long as that is the way you feel, the arrangement [contract] we have between us is hereby null and void and as far as I am concerned if you want to go about your business you are perfectly at liberty to do so and if you stay, you stay under the original form of doing business"; and that plaintiff "didn't agree to anything, he just left." On the other hand plaintiff testified that McClure questioned him about the alleged statement to Jones *before* the contract was signed; that he denied making such statement to Jones; that he made no admission in relation thereto to McClure; and that the latter did not speak to him in the manner just above quoted.

Jones did not testify nor was his failure to do so explained.

The evidence further shows that plaintiff worked until September 28, 1948, when, according to defendant, he was discharged because he was then soliciting business for himself. The only moneys received by plaintiff, in varying sums and at irregular intervals, from the signing of the contract on February 20, 1948 to the time of his discharge amounted in all to $1263.17, notwithstanding that, irrespective of any guarantee, he had admittedly earned $1525.41 on the basis of 40 per cent of the commissions paid to defendant during that period. On this point plaintiff testified in substance that defendant was dilatory in paying him what was due even on its own computation; that in almost every instance when he was able to collect any money he asked for payment in accordance with the contract; that McClure's answer always was that he did not have enough money to pay him "in full," saying that what he was giving him was "all he could spare at that time"; and that with such understanding and because of necessity he accepted whatever money McClure gave him.

On the other hand McClure denied that plaintiff ever asked him for the payment of the monthy amount specified in the contract, and he asserted that his sales had dropped and that his services were otherwise generally unsatisfactory. This testimony is, however, weakened by the undisputed evidence that sometime in August 1948, when plaintiff needed money for his father's illness, defendant assisted him in securing a loan of $600 from its bank by means of a note which it later paid. Plaintiff freely admitted that defendant was entitled to a credit of that amount.

The trial justice found that the contract was one for hire at the rate of $416.67 a month in accordance with the guarantee; that it had not been rescinded shortly after its execution, as defendant contended; that plaintiff acted in good faith until September 28, 1948; and that, giving due consideration to all equities between the parties, there was a balance of $1125.68 due and owing to plaintiff.

Defendant's contentions are: first, that the trial justice misconstrued the contract; secondly, that in any event the contract had been rescinded soon after it was signed; and thirdly, that the damages were excessive in a certain particular which will hereinafter appear. We will consider these contentions in the order stated.

Generally speaking, a contract, especially if in writing, is to be construed in accordance with the ordinary meaning of the language used in order to ascertain the intention of the parties at the time the instrument was executed. If such intention is reasonable and lawful the contract will be enforced as thus construed. Furthermore, it is well established that if the language of a written contract is ambiguous it is ordinarily interpreted more strongly against the writer thereof. *Barden* v. *Sarkin*, 73 R. I. 170; *Pelletier* v. *Bozoian*, 73 R. I. 332; *Gilman* v. *Murphy*, 67 R. I. 149, 154; *Marcaccio, Inc.* v. *Santurri*, 51 R. I. 440, 442, and cases cited. In the instant case the contract is clearly open to a construction that the guarantee of a minimum monthly payment of $416.67 was the inducement that led plaintiff to sign that instrument and remain in defendant's employ. Since the contract was written by defendant it was within its power to express itself clearly if it intended something different from the import of the language that it used. In the circumstances the language adopted by the writer will be given its ordinary meaning and under the above-cited authorities will be construed more strongly against that party.

In its brief defendant argues that "It would certainly be most reasonable in this case to consider the agreement, as far as the guarantee is concerned, as an entire contract for each year, from year to year, and that the agent must complete one year's satisfactory performance as a condition precedent to recovery on the guarantee." The difficulty with that argument is that defendant imports into the contract a condition which is neither expressly stated nor necessarily implied from its language.

■ Considering all the circumstances of record our judgment is that, as written by defendant, the contract was an open-end and continuing agreement of employment which, unless ended for cause, was terminable only as therein provided; that plaintiff was to be compensated for his services, either by actual payment or by a credit, at the rate of $416.67 a month, said sum to include commissions actually earned, so as to guarantee him a yearly income of $5000; and that there should be a "final accounting" of the account between the parties by January 15 each year. In other words, our conclusion is that in regard to plaintiff's right to compensation at a guaranteed monthly rate the contract was severable and that he was entitled to recover on the basis of such rate up to the time he ceased to act in good faith for his principal. See *Barker* v. *Barker Artesian Well Co.*, 45 R. I. 297, 303. The trial justice therefore did not err in his construction of the contract.

■ Defendant's next contention is that the contract was rescinded shortly after its execution. As herein appears the testimony of plaintiff and McClure on this issue was in conflict. This raised a clear question of fact for the determination of the trial justice. He saw and heard those witnesses testify, an advantage we do not have, and his rescript shows that he gave due consideration to the conflicting evidence on the issue thus presented to him before deciding against the defendant. From our examination of that evidence we cannot say that his decision was clearly wrong. In such case our well-established rule, which needs no citation of authority, requires us to sustain the decision.

Defendant finally contends that the damages are excessive. Although plaintiff testified that he began "looking" for accounts of his own about September 1948 with the intention of terminating the contract in January as therein provided, the trial justice in effect found from his consideration of the conflicting evidence that the plaintiff had acted in good faith up to September 28, 1948. Here

again, following the appellate rule hereinbefore mentioned, we cannot say that such conclusion was clearly wrong.

The defendants' exception is overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Francis J. O'Brien,* for plaintiff.

*Temkin & Temkin, Alexander G. Teitz,* for defendants.