PHILLIP F. COE *et al., Trustees, vs.*
EDWARD ZWETCHKENBAUM *et al.*

JULY 7, 1959.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

CONDON, C. J. This is a proceeding under general laws 1956, §9-14-24, in which the parties having adversary interests in certain questions concerning the construction of an indenture of lease have concurred in stating such questions in the form of a special case for our opinion, they first having obtained leave to file the case. In accordance with the requirements of the statute as it has been construed by this court the parties have agreed on the statement of facts in the petition. *Guild, For an Opinion,* 28 R. I. 88.

Phillip F. Coe, Bradley B. Gilman and Sherburne B. Rockwell, Jr., of the city of Worcester in the Commonwealth of Massachusetts, trustees of the R. C. Taylor Trust, brought the petition and hereinafter will be referred to as the petitioners. Edward Zwetchkenbaum and Gussie Kaplan, of the city of Taunton in said commonwealth, have been made respondents and hereinafter will be so referred

to. The real estate which is the subject of the lease over which the parties are in controversy is situated in the city of Pawtucket in this state.

The petitioners in their petition and the respondents in their answer concur in the following statement of two questions involving the construction of certain covenants in the lease: "(a) Whether the real estate taxes assessed by the City of Pawtucket as of December 31 for the years subsequent to 1950 'are in excess of the taxes assessed upon the property for the tax year ending nearest the date of possession,' viz., July 15, 1950, under the terms of Paragraph 13 of Article V of the lease between petitioners and respondents; (b) Whether the sewer rental charges assessed by the Blackstone Valley Sewer District Commission and calculated upon metered consumption of water are charges properly to be borne by respondents under the terms of Article V of the lease between petitioners and respondents."

On May 28, 1948 the trustees leased to respondents and Pincus Zwetchkenbaum, now deceased, the premises located at 32-42 Broad street in the city of Pawtucket for a term of years commencing July 15, 1950 and ending May 31, 1972. The respondents are the devisees of the interest of Pincus Zwetchkenbaum under the lease.

The following paragraphs of article V of the lease are pertinent to the consideration of the above-stated questions:

"The said Lessee and the Lessee's respective successors, heirs, executors, administrators, and assigns, covenant and promise with and to the said Lessor and its successors and assigns, during said term and for such further time as the said Lessee, or any other person or persons claiming under the Lessee, shall hold the said premises or any part thereof;"

"(3) To pay to the Lessor monthly all charges for water used for general purposes on the demised premises, according to meter readings. If at any time during the term of this Lease the Lessee should install air-conditioning equipment, a

suitable meter to register the water consumed shall also be installed by the Lessee, and Lessee shall pay to the Lessor the water bills as rendered for same. * * *"

"(4) To pay all charges for electricity used on said premises; also for gas used on said premises, and any other utility services;"

"(8) To save said Lessor and its successors and assigns harmless from all loss or damage occasioned by the use, misuse, or abuse of the city water, or bursting of the pipes; and to save the Lessor and its successors and assigns harmless and indemnified from and against all loss, liability or expense that may be incurred by reason of any accident with the machinery, heating apparatus and equipment, hatchways, signs, awnings, elevator, gas, electricity, water, or other pipes, coal-holes or covers, or from not removing snow and ice from the sidewalks, or from any other accidents;"

"(13) In case the taxes assessed by the City of Pawtucket for any year during the term of this Lease, upon the building of which the leased premises are a part or upon the land upon which the building stands, or upon both, are in excess of the taxes assessed upon the property for the tax year ending nearest the date of possession, either because of an increase in the tax rate or an increase in the valuation or both, then the said Lessee does further promise and covenant to pay as further rent in addition to that hereinbefore specified, fifty percent (50%) of the amount of said increase, in case the Lessee occupies the premises for the whole of such tax year, or a proportionate part of said 50% in case the Lessee occupies the premises only a fractional part of such tax year. Said increased rent shall be payable on the next rent day after the said tax notices are sent to the Lessor and a bill rendered by the Lessor to the Lessee;"

On January 13, 1953 the lessees subleased a portion of the premises to Operations, Inc., a Rhode Island corpora-

tion, and that lease contains similar provisions. When the taxes assessed as of December 31, 1954 became payable a controversy arose between respondents and their sub-lessee over the construction of such provisions. Until that time the respondents and the petitioners appear to have been in agreement as to the meaning of the provisions in their lease. They had selected December 31, 1950 as the base assessment date upon which to calculate increases in taxes and in accordance with that understanding respondents reimbursed petitioners for 50 per cent of the increases in taxes assessed as of December 31 in the years 1951, 1952, and 1953.

After Operations, Inc. refused to accept a like construction of the sublease the respondents brought suit against it in the United States District Court for the District of Rhode Island for a declaratory judgment. That court dismissed the suit. Thereafter respondents refused to comply further with the construction under which they had been reimbursing the petitioners. Apparently they had been advised that such construction was not correct and that one which was less burdensome to them was proper and should be adopted.

The instant proceeding was agreed upon to resolve the controversy between them. At the same time the parties desired Operations, Inc. to be summoned in and made a party. In accordance with a prayer therefor in the petition it was duly served with a writ of subpoena, but in response thereto it filed a motion to dismiss the petition as to it on the grounds that it was not a party to the controversy between petitioners and respondents, that its lease was an entirely different and separate transaction, and that it did not necessarily involve the same matters. After a hearing we granted the motion since it was obvious the movant would not concur in the statement of the questions and facts. Unless a person so summoned evinces a willingness to join in such statement he cannot be made a party thereto. If it appears that he is a necessary party to the proceeding

his unwillingness to concur will result in the dismissal of the petition. *Guild, For an Opinion,* 28 R. I. 88. In the circumstances here it did not appear to us that Operations, Inc. was a necessary party.

The first question (a) arises as a result of a change in the tax assessment date. At the time the lease was entered into on May 28, 1948 and when occupancy was commenced thereunder on July 15, 1950 the assessment date was June 15. However, in 1949 the legislature enacted public laws 1949, chapter 2330, which provided that beginning on December 31, 1950 taxes should be assessed on that date and every year thereafter. This legislation resulted in there being two assessment days in 1950, namely, June 15 and December 31. Consequently when the lease became operative after July 15, 1950 and the time arrived for respondents to pay the rent as stipulated in article V (13) the fact that there were two assessment days in 1950 created an ambiguity in paragraph (13) which did not exist when the lease was entered into in 1948. In other words it rendered uncertain what year was the "tax year ending nearest the date of possession," namely, July 15, 1950.

The parties are agreed that there is an ambiguity. The petitioners suggest five possible constructions to resolve it and respondents suggest two. However, petitioners contend that the construction which was adopted by the parties and followed by respondents until 1954 is the one which the court should adopt. Neither of the suggestions by respondents is consistent with such practical construction which, however, they contend should not necessarily be controlling in the circumstances. On the contrary they reject December 31 as the base assessment date for applying the provision of paragraph (13) and claim that June 15 must necessarily have been in the contemplation of the parties when they entered into the lease in May 1948, since at that time the "tax year" as understood by them ran from June 15 in one calendar year to June 15 in the next calendar year.

There would be some merit in that contention if there had been no practical interpretation of the lease by the parties. In the face of such a contrary interpretation and of such prolonged duration we are of the opinion that respondents themselves have deprived their contention of any merit it otherwise would have. It is well established here as well as in other jurisdictions that where the terms of a contract are ambiguous and the parties themselves have placed their own construction upon the contract such construction will ordinarily be resorted to by the court to ascertain its true intent. *Shepard Land Co.* v. *Banigan*, 36 R. I. 1; *Hassett & Hodge* v. *Cooper*, 20 R. I. 585; *Davis* v. *Manchester*, 17 R. I. 577. The same rule is applicable to a lease as well as a contract. *R. H. Stearns Co.* v. *Anderson*, 304 Mass. 138.

Therefore we are of the opinion that December 31, 1950 must be treated as the base assessment date in determining whether the real estate taxes assessed by the city of Pawtucket as of that date for the years subsequent to 1950 are in excess of the taxes assessed upon the leased premises for the "tax year" ending nearest July 15, 1950, the date of respondents' occupancy or possession thereof. It is to be observed that wherever we have used the term "tax year" we have been merely quoting the lease and not in any sense holding that our taxation statutes are to be construed as prescribing any such period for which taxes are assessed. We have heretofore had occasion to point out that taxes in this state are assessed *as of* the assessment date and not *for* any specific period. See *Industrial Trust Co.* v. *Wilson*, 58 R. I. 378, and *Whitmarsh* v. *Gallotta*, 84 R. I. 234.

The second question (b) arises by reason of the fact that after the lease was entered into the Blackstone Valley Sewer District Commission, which had been created by P. L. 1947, chap. 1837, assumed service of the sewer system of the city of Pawtucket for which service the commission first assessed, for the period from September 1, 1952 to August 31,

1953, a service charge on each realty owner. Subsequently for like periods annually such charge was calculated upon the annual volume of water used as measured by each water meter. The petitioners paid such assessments regularly when due and respondents reimbursed them for 50 per cent thereof for each annual period until August 31, 1955. Until that date the parties apparently agreed that under the language of article V of the lease respondents were obligated to pay such assessments in the proportion stipulated therein.

As in the case of the taxes it appears that Operations, Inc. refused to accept a construction of similar provisions in the sub-lease which would obligate it to reimburse respondents. Consequently they questioned the validity of the construction under which they had without objection reimbursed petitioners.

The respondents now contend that none of the provisions of article V is ambiguous but on the contrary they argue it is clear that said provisions are not reasonably referable to sewerage assessments. They further argue that such assessments cannot be equated with "utility services" as that term is used in paragraph (4). And in any event they contend that if there is an ambiguity it should be resolved most strongly against petitioners in accordance with the rule as cited in 3 Thompson, Real Property, §1113.

The petitioners do not contend that the provisions in question are ambiguous as to the sewer assessments, nor do they rely on the rule of practical construction as in the case of the taxes. On the contrary they strongly urge that a sewer system is properly classified as a utility and especially so when assessments for its use are based upon the amount of water used according to meter readings. Such an assessment, they point out, is not a tax but a charge for a service used or for a benefit conferred. They also emphasize that as in the case of gas or electricity the amount of the assess-

ment is determined solely by the extent of the use and therefore is in the control of the lessee.

We are clearly of the opinion that a sewer system whether operated by a state agency or by a public service corporation is a public utility. An assessment for the use thereof whether measured as here by the volume of water shown by the water meter or by some other method reasonably referable to the extent of the use of the service is in no sense a tax but is a rate or charge and has been referred to as sewer rent. *Philadelphia* v. *N. Snellenburg & Co.*, 163 Pa. Super. 507. Rhyne on Municipal Law, at page 462, states: "It is the majority rule that sewer service charges are neither taxes nor assessments, but are tolls or rents for benefits received by the user of the sewer system * * *"; and in support thereof cites, among others, cases from Michigan, New York, Ohio and Virginia. Courts in other jurisdictions have implied and in some instances expressly held that a sewer system is a public utility. *City of Des Moines* v. *City of West Des Moines*, 239 Iowa 1; *Atlantic Construction Co.* v. *City of Raleigh*, 230 N. C. 365; *Laverents* v. *City of Cheyenne*, 67 Wyo. 187; *Hamilton's Appeal*, 340 Pa. 17.

Therefore we are unable to agree with respondents' contention that the assessments made by the Blackstone Valley Sewer District Commission cannot be reasonably construed to be "charges" for "any other utility services" within the meaning of that language in paragraph (4). For that reason our answer to question (b) is that such assessments must be borne by respondents in accordance with the provisions of the lease.

On July 13, 1959 the parties may present for our approval a form of declaratory decree, in accordance with this opinion, for entry by the court.

ON MOTION FOR REARGUMENT.

JULY 22, 1959.

PER CURIAM. After our decision in the above case the respondents asked and received permission to file a motion

for reargument. Pursuant to this permission they have filed such a motion, setting out therein certain reasons on which they base their contention that justice requires a reargument of the case. We have carefully considered all those reasons and we are of the opinion that they are without merit.

Motion denied.

*Edwards & Angell, Edward F. Hindle, Ronald R. Lagueux,* for petitioners.

*William R. Goldberg, Ronald R. Gagnon,* for respondents.