367 A.2d 203.

WOONSOCKET TEACHERS' GUILD, LOCAL 951 *vs.*
SCHOOL COMMITTEE OF THE CITY OF WOONSOCKET *et al.*

DECEMBER 31, 1976.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J. This is a civil action brought by the Woonsocket Teachers' Guild, Local 951 (the guild) to restrain the School Committee of the City of Woonsocket (the committee) from making public certain information regarding "grievances", which are complaints by teachers concerning contract violations. The Evening Call Publishing Company asserted an interest in publishing the grievance material in its newspaper, the Woonsocket Call, and was allowed to intervene as a party defendant. A temporary restraining order was entered against the committee. Following a hearing on a motion for a preliminary injunction, which the parties agreed to treat as a hearing on a permanent injunction, judgment was entered for the de-

fendants and the temporary restraining order was dismissed. The guild filed an appeal in this court, and we stayed the dismissal of the restraining order pending disposition of that appeal.

The facts giving rise to this dispute are uncomplicated. In January 1976, the Woonsocket Call sought to publish all information relating to grievances filed by members of the guild. The committee voted to release the information. The following day, the guild brought suit to enjoin the planned release by the committee, on the ground that such release would be in violation of the following clause in the teachers' contract:

> "9-8.06 All matters pertaining to a grievance shall be treated as confidential material by the Committee, and shall not be consulted in decisions regarding reemployment, promotions, assignment, or transfer."

The trial justice aassumed, arguendo, that the above clause did forbid the publication of any grievance material. Having done so, he then ruled that such a clause was in violation of the first amendment to the United States Constitution, and chapter XVI, article 12, section 1 of the Home Rule Charter of the city of Woonsocket pertaining to public records, and so was unenforceable. Accordingly, he denied the relief sought by the guild and entered judgment for defendants.

On appeal, the guild argues that the denial of the injunction was the result of the trial justice's erroneous interpretation of the first amendment and the city charter. In short, the guild argues that the contract provision in question was not illegal and should have been enforced.

It is apparent to us, however, that discussion of the constitutional questions involved is premature. The threshold issue in this case is one of contract interpretation. Before we can address the question of the validity of the disputed clause, we must first ascertain its meaning.

The rules of contract interpretation which we must apply are well-settled. Our primary task, of course, is to attempt to ascertain the intent of the parties. In interpreting a written contract, the intention of the parties must govern if that intention can be clearly inferred from its terms and can be fairly carried out consistent with settled rules of law. *Hill* v. *M. S. Alper & Son, Inc.*, 106 R.I. 38, 47, 256 A.2d 10, 15 (1969). It must be added, however, that the intent we seek is not some undisclosed intent that may have existed in the minds of the contracting parties but the intent that is expressed by the language contained in the contract. *Theroux* v. *Bay Assocs., Inc.*, 114 R.I. 746, 339 A.2d 266 (1975); *Flanagan* v. *Kelly's Sys. of New England, Inc.*, 109 R.I. 388, 286 A.2d 249 (1972); *Thorp & Martin Co.* v. *Hamilton-Invincible, Inc.*, 36 F.Supp. 822 (D.R.I. 1941). And, in interpreting the language of the contract, the words used are to be assigned their ordinary meaning. *Armfield* v. *Frank N. McClure, Inc.*, 77 R.I. 390, 394, 75 A.2d 196, 198 (1950); *Cochran* v. *Lorraine Mfg. Co.*, 52 R.I. 17, 155 A. 572 (1931). Furthermore, in ascertaining the intent, we must look at the instrument as a whole and not at some detached portion thereof. *Hill* v. *M. S. Alper & Son, Inc., supra; Shuster* v. *Sion*, 86 R.I. 431, 136 A.2d 611 (1957). If the terms of a contract are ambiguous, the court will look to the construction placed upon such terms by the parties themselves as an aid in determining their intended meaning. *Coe* v. *Zwetchkenbaum*, 89 R.I. 358, 153 A.2d 517 (1959); *Cook* v. *Dunbar*, 66 R.I. 266, 18 A.2d 658 (1941). The circumstances surrounding the execution of the contract are also relevant to the determination of that intent. *Minor* v. *Narragansett Machine Co.*, 71 R.I. 108, 116, 42 A.2d 711, 715 (1945).

We realize that although the foregoing rules are founded upon ample authority and we may state them with certainty, their application is often difficult. The rules must

be applied to a given set of facts with great care, keeping in mind the purposes the rules were designed to serve. Bearing this caveat in mind, we turn to the task at hand. The contract provision in question, clause 9-8.06, appears in section 8, which reads as follows:

"Section 8:  Teacher Files

"9-8.00  The personnel file on each teacher shall be maintained in the Central Office Administration Office under the following circumstances:

"9-8.01  It shall be the responsibility of the teacher to furnish pertinent information necessary for his/her continued employment. No material derogatory to a teacher's conduct, service, character, or personality shall be placed in the file unless the teacher has had the opportunity to read the material. The teacher shall acknowledge that he/she has read the material by affixing his/her signature on the actual copy to be filed, with the understanding that such signature merely signifies that he/she has read the material to be filed and does not necessarily indicate agreement with its contents.

"9-8.02  The teacher shall have the right to answer any material filed and his/her answer shall be attached to the file copy.

"9-8.03  Upon appropriate request by a teacher, he/she shall be permitted to examine his/her own file in the presence of the Superintendent or his designee.

"9-8.04  The teacher shall be permitted to reproduce any material in his/her file except the material relating to his/her original application for employment.

"9-8.05  No anonymous letters or materials shall be placed in the teacher's file.

"9-8.06  All matters pertaining to a grievance shall be treated as confidential material by the Committee, and shall not be consulted in decisions regarding reemployment, promotions, assignment, or transfer.

"9-8.07 Material will be removed from a file and given to the teacher when a teacher's claim that it is inaccurate or unfair is sustained at any step of the grievance procedure or pursuant to an order of the State Labor Relations Board."

The guild maintains that the use of the word "and" to join the two phrases in clause 9-8.06 is clear indication that each phrase is to be given separate and equal force; that is, the committee is required both to keep grievance material confidential *and* not to consult it in making employment decisions. The committee, on the other hand, argues that "and" should not be used in the conjunctive sense. It contends that the second phrase was intended to define and limit the first phrase, with the result that the clause means, essentially, that the committee shall treat grievance material as confidential *in the sense that* it shall not consult it in making employment decisions.

It is undoubtedly true that the more common use of the term "and" is, as the guild suggests, as a conjunction, joining two independent phrases. However, the term is often used in other senses. Cases abound in which "and" is construed to have a disjunctive meaning, for example. More to the point, the ordinary meaning of "and" clearly includes the one suggested by the committee. According to Webster, the definition includes the following:

"2. Used as a function word to express * * * (3) logical or semantic modification of one notion by another as when (a) two elements are joined so that, the second logically qualifies the first." *Webster's Third New International Dictionary* (Unabridged) (1971).

An example of the use of the term in this sense may be found in *Spears* v. *Independent Order of Foresters, Inc.*, 107 S.W.2d 126, 131 (Mo. App. 1937).[1] Thus we are led

---

[1]There, an insurance contract read in part as follows:

" 'In the event of the non-payment when due of any contribution required under this Certificate, or demanded by the Order, the Order

to the conclusion that the language used in clause 9-8.06 admits as possible both of the interpretations suggested to us by the parties.

Since an examination of the language alone does not reveal the meaning of the clause, we must consider whether the context in which it appears sheds any light on its meaning. Section 8, which contains the disputed provision, is entitled "Teacher Files" and is contained in Article IX, entitled "Working Conditions". There is a separate article, article XI, which is entirely devoted to the conduct of grievance proceedings. Since this is a fairly formal contract having clearly defined and labeled individual articles, the presence of a clause in one article as opposed to another may be taken as some evidence of its intended meaning. We think it not unlikely that had the parties intended clause 9-8.06 to require absolute confidentiality for all grievance materials, that clause would have appeared in article XI, governing grievances. Its presence in article IX, relating to working conditions, tends to support the committee's contention that it was intended only to prevent the committee from referring to grievance materials contained in a teacher's file in making employment decisions.

Further support is lent to this conclusion by a consideration of the wording of section 8 itself, in light of the practices of the school system. The clause in question provides that grievance matters "shall be treated as con-

---

will continue this Certificate in force notwithstanding such non-payment, *and* will pay the face of this certificate in the event of the death of the within member within the period stipulated in the following table opposite the number of years * * *.'" (Emphasis added.) *Spears v. Independent Order of Foresters, Inc.*, 107 S.W.2d 126, 128 (Mo. App. 1937).

The phrase preceeding "and" was held *not* to establish a separate duty, independent of the more limited duty created by the phrase following "and", to continue coverage.

fidential material *by the Committee*". (Emphasis added.) No other officials are mentioned specifically. However, the uncontroverted testimony of the assistant superintendent of schools establishes that the committee does not have primary custody or control of the grievance material. The records of all grievances are kept by the assistant superintendent. One of his chief functions, according to his testimony, is to deal with all matters regarding personnel. It is within his power to release personnel information. It is important to note that when statistical data concerning grievances was published more than a year before this dispute arose, the request by the newspaper for such information was made to, and granted by, the assistant superintendent. Again, when the information which is here in question was requested by the Woonsocket Call, that request was addressed to the assistant superintendent. In view of these practices, one might expect that if complete confidentiality of all grievance matters had been intended, the contract provision in question would be directed toward the superintendent. Yet, no such proscription appears. It might be argued that this omission was inadvertent or may be filled by implication. The force of this argument is blunted, however, by the fact that a prior clause in the same section, 9-8.03, refers specifically to the role of the superintendent as the custodian of teacher files.

On the other hand, specific reference solely to "the Committee" in 9-8.06 is consistent with the interpretation of that clause put forward by the committee. The only body that has the authority to make the final decisions regarding "reemployment, promotions, assignment, or transfer" referred to in clause 9-8.06 is the committee. Thus it makes sense, if the point of the provision is to prevent the use of grievance matters in such decisions, to say that they shall be treated as confidential "by the Committee".

A comparison of the provisions of the present contract

with those of its immediate predecessor is also instructive. The 1972-1974 contract contained a clause 9-8.06 which was identical to the one appearing in the present contract. That contract also provided, in clause 11-2.06, an optional *public* grievance hearing:

> "A private or public hearing will be held as requested by the Guild with the provision that no publicity will follow a private hearing."

The availability of a public hearing gives some indication that 9-8.06 was not intended in the prior contract to require absolute confidentiality of grievance matters. Since 9-8.06 was retained in the present contract without change, we may accept its apparent prior intended meanings as some evidence of its present meaning.

There is one additional inference in support of the committee's position which may be drawn from textual analysis of the contract. Under the guild's interpretation, clause 9-8.06 singles out grievance materials to be confidential. However, the context in which that clause appears casts some doubt on such a theory. That is, an earlier clause in section 8 recognizes that other material may be in a teacher's file which a teacher presumably would not want disclosed. Clause 9-8.01 provides: "No material derogatory to a teacher's conduct, service, character, or personality shall be placed in the file unless the teacher has had the opportunity to read the material." Yet, the contract does not require that any of *this* material be kept confidential. Viewed in this light it is perhaps more reasonable to adhere to the committee's interpretation, rather than that advanced by the guild according to which only one type of material, and probably not the most potentially harmful material, was singled out to be treated as confidential.

Finally, we note that the actual conduct of the superintendent is consistent with the committee's position. That is, in accord with the theory that grievance material is not

to be used in making employment decisions, grievance material is *not* put into a teacher's regular file. It is kept in a separate file in the assistant superintendent's office, which file is not available to the interviewing committees which make personnel recommendations to the committee.

In our opinion, in light of the foregoing considerations, the more reasonable interpretation of the contract provision in question is that although it forbids reference to grievance material by the committee in making the specified employment decisions, it does not require that such material be treated as confidential in general. Hence, the guild is not entitled to an injunction restraining the committee from releasing grievance material.

The appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

*Abedon, Stanzler, Biener, Skolnik & Lipsey, Milton Stanzler, Richard A. Skolnik, Jordan Stanzler,* for plaintiff.

*Richard R. Ackerman, Inc.,* for Woonsocket School Committee; *Tobin, LeRoy & Silverstein, Michael A. Silverstein, Merrill W. Sherman,* for Intervenor, The Evening Call Publishing Company d/b/a The Woonsocket Call.