March 12, 2024

**Supreme Court**

No. 2022-228-Appeal.
(P 17-4447)

Nancy Robayo          :

v.          :

Luis Robayo.          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Nancy Robayo            :

v.            :

Luis Robayo.            :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

### O P I N I O N

**Chief Justice Suttell, for the Court.**  The plaintiff, Nancy Robayo, appeals from a Family Court judgment in favor of the defendant, Luis Robayo.[1]  In addition to granting the defendant's motion for summary judgment, the Family Court denied the plaintiff's motion and amended motion for relief from judgment, as well as her motion to adjudge the defendant in contempt.  At the heart of the plaintiff's several arguments on appeal is a belief that her marital settlement agreement with the defendant, her ex-husband, entitles her to survivor benefits in his federal civilian pension.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the plaintiff's written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this

---

[1] The defendant did not participate in these proceedings and was defaulted.

case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Family Court.

# I

## Facts and Travel

According to their marital settlement agreement, the parties were married in 1990 and lived in Virginia until 2002, when plaintiff moved to Rhode Island. The defendant remained in Virginia; and, by 2010, the couple's marital relationship had ended for all practical purposes. In 2017 and 2018, the parties filed claims and counterclaims for divorce, which were based on irreconcilable differences that led to the irremediable breakdown of their marriage.

The parties presented the agreement as a joint exhibit in the Family Court, during a nominal divorce hearing, on July 2, 2018. The agreement contained several provisions regarding the distribution of benefits related to defendant's service in the United States military and his civilian employment with the federal government. The parties agreed, for example, that plaintiff was entitled to 50 percent of the marital portion of defendant's military pension—which he was receiving at the time—calculated from the date of their marriage to defendant's retirement from the military in 2000.

As for defendant's federal civilian employment, the agreement contained two provisions regarding the distribution of benefits associated with the Federal

Employee Retirement System (FERS). One provision concerns a retirement-savings plan and is not at issue here. The other provision concerns defendant's federal civilian pension, which, in contrast to his military pension, he was not receiving at the time. The provision reads, in relevant part, "in the event that [defendant] is entitled to receive a pension * * * as a result of his employment as a civilian with the federal government, [plaintiff] shall be entitled to receive one-half [*sic*] of his civilian retirement plan from the date of his employment until June 30, 2018."

Two weeks after the nominal divorce hearing, on July 16, 2018, the Family Court entered a decision pending entry of final judgment, presented by defendant's attorney, that incorporated the agreement "as a separate, independent contract." Nevertheless, the provisions relating to defendant's pensions were included in the decision pending entry of final judgment, prefaced by the following statement: "The parties have inserted this paragraph into the Interlocutory Decision and upcoming Final Judgment for convenience purposes only, and the following shall not be modifiable[.]" The wording was essentially the same as in the marital settlement agreement with one notable change. The decision pending entry of final judgment contained an additional sentence concerning defendant's federal civilian pension, to wit, "The [p]laintiff shall be entitled to receive any benefits such as COLAs and

pre-retirement options attributable to her share."[2]  This sentence is the crux of the appeal.[3]

The Family Court entered final judgment, and the marriage was dissolved, on October 15, 2018.  Eleven months later, on September 9, 2019, plaintiff filed a motion for relief from judgment under Rule 60(b)(1) of the Family Court Rules of Domestic Relations Procedure.  She alleged that, when negotiating the terms of their divorce, the parties were unaware that defendant's federal civilian pension contained survivor benefits and therefore did not address whether to distribute them. According to plaintiff, she was entitled not only to relief from judgment under the doctrine of mutual mistake, but to a fair and equitable share of the survivor benefits as well.  Soon thereafter, on October 22, 2019, plaintiff filed a motion to adjudge defendant in contempt for refusing to grant plaintiff a 50 percent share of the survivor benefits.

This second motion expanded on plaintiff's argument for being entitled to a share of the survivor benefits in defendant's federal civilian pension.  Her argument hinged on the sentence, quoted above, that the parties added to the relevant provision

---

[2] "COLAs" are cost-of-living adjustments. *See* Black's Law Dictionary 438 (11th ed. 2019).

[3] Although the marital settlement agreement was incorporated but not merged into the court judgment, we are satisfied from the parties' testimony at the nominal divorce hearing that they intended the additional sentence to constitute a modification of the original agreement.

of the decision pending entry of final judgment and which, in turn, was reflected in the final judgment. To reiterate, the amendment provided that plaintiff was "entitled to receive any benefits such as COLAs and pre-retirement options attributable to her share." According to plaintiff, the express reference to certain benefits should not mean the exclusion of others, and "[i]t was the clear intent of the parties" for plaintiff to "receive any and all benefits" to which she was otherwise entitled. Therefore, even though the provision referred only to "COLAs and pre-retirement [options]," plaintiff argued that her entitlement to survivor benefits, should they exist, was implied.

The case saw few developments until defendant filed a motion for summary judgment on September 9, 2021. In addition to noting that he had since remarried, defendant argued in his motion that there was no genuine issue of material fact that "would illustrate clear and convincing evidence of mutual mistake."

The plaintiff filed an objection to defendant's motion for summary judgment on September 20, 2021. The next day, hours before a hearing on the parties' motions, plaintiff filed an amended motion, styled as an "amended motion for relief from judgment and to compel entry of QDRO with survivorship language,"[4] under Rule 60(b). In the amended motion, plaintiff focused less on the express reference to COLAs and pre-retirement options and more on the language that she was entitled

---

[4] A "QDRO" is a qualified domestic relations order.

to "any benefits such as" those expressly stated. "A survivorship annuity," she reasoned, "falls into that category of 'any benefit.'" In the alternative, plaintiff argued that the agreement was "ambiguous regarding the issue of the entitlement to a survivorship option."

The plaintiff's motions for relief from judgment, contempt, entry of a qualified domestic relations order, and amended motion for relief from judgment, as well as defendant's motion for summary judgment, all came for hearing before the Family Court on September 21, 2021. By agreement of the parties, the transcript of the July 2, 2018 nominal divorce hearing was marked as a joint exhibit. During the 2018 hearing, on direct examination, defendant confirmed that he understood that, with respect to his federal civilian pension, plaintiff would be entitled to one half of the pension's value as of the hearing date, and that, moving forward, while his pension would grow as he "continue[d] to work, * * * hers [would] end as of [that] date[.]" According to his attorney, defendant found it "very hard to wrap his head around the fact that" plaintiff was entitled to a 50 percent share of his federal civilian pension even though they had not lived together during the entire sixteen years that he had been a federal civilian employee. Nevertheless, because he and plaintiff had been legally married during that time, he understood the agreement's terms.

The July 2, 2018 transcript also revealed that, during a lunchtime recess, the parties negotiated and agreed upon the additional language regarding plaintiff's

entitlement to benefits in defendant's federal civilian pension. On direct examination, plaintiff acknowledged that, "should there be any" cost-of-living adjustments or early retirement benefits associated with defendant's federal civilian pension, she would "receive [her] marital share of those[.]"

At the hearing on the parties' motions, plaintiff restated the arguments she made in her amended motion with the added contention that, because defendant's attorney presented the decision pending entry of final judgment, the language therein should be construed against defendant. In response, defendant noted that plaintiff was entitled under the terms of the agreement to 50 percent of his federal civilian pension "from the date of his employment until June 30, 2018." The plaintiff's share was thus frozen in time, according to defendant, and could not reach a survivor benefit because it would not accrue until his death. According to plaintiff, however, the agreement assigned her a "separate interest" in defendant's federal civilian pension and not just a share of the payments made from the pension. This separate interest in defendant's pension, plaintiff argued, entitled her to a share of "everything in the plan, which means all the bells and whistles that come under the plan[,]" including any survivor benefits that may accrue.

The hearing concluded with the trial justice allowing plaintiff to supplement her objection to defendant's motion for summary judgment with a supporting memorandum, which she filed on December 13, 2021. In addition to opposing

summary judgment, plaintiff argued in her memorandum that the trial justice should grant not only her amended motion for relief from judgment, but also her motion to adjudge defendant in contempt, which the trial justice had denied, without prejudice, during the hearing.

On April 26, 2022, the trial justice rendered a bench decision granting defendant's motion for summary judgment and denying plaintiff's motions for relief from judgment and for contempt. After recounting the facts and travel, the trial justice found that there had been no mutual mistake regarding the existence of survivor benefits in defendant's federal civilian pension. From there, she examined plaintiff's revised claim that the agreement clearly entitled her to a share of any survivor benefits. The trial justice began with four observations. "I do think this [c]ourt [has] to consider," she said, that the agreement "was negotiated over eight months with very competent attorneys, that the parties had been separated for 15 years," that defendant's entire federal civilian pension "was earned during that separation," and that the attorneys and parties knew all of this when executing the agreement. The trial justice also noted that "[b]oth parties at all times had counsel. In fact, they each had very good counsel."

With these observations in mind, and after reviewing both the agreement and the transcript of the nominal divorce hearing, the trial justice found that there was no issue of material fact regarding plaintiff's entitlement to the survivor benefits in

defendant's federal civilian pension. For one, plaintiff had made no showing "of any facts that would illustrate clear and convincing evidence of mutual mistake." Furthermore, "[t]he plain language is clear," the trial justice explained, that plaintiff "has a right up until June 3[0], 2018, and anything that came with it up until that date. After that, there are no rights." In other words, because "an end date was attached" to plaintiff's rights, the trial justice found that she was not entitled to any survivor benefits in defendant's federal civilian pension, which had not accrued as of that date.

On July 1, 2022, judgment entered granting defendant's motion for summary judgment, the court finding that there was no mutual mistake, and denying plaintiff's motion and amended motion for relief under Rule 60(b) and also denying her motion to adjudge defendant in contempt. The plaintiff filed a timely notice of appeal on July 19, 2022.

## II

### Discussion

The plaintiff makes three arguments on appeal. First, plaintiff asserts that the "plain language of the agreement dictates" that she is entitled to any survivor benefits in defendant's federal civilian pension. Second, plaintiff argues in the alternative that the terms of the agreement, if ambiguous, should be construed against defendant, and therefore she is entitled to any survivor benefits. Third, she contends

that the trial justice took judicial notice of counsel for defendant's experience litigating in the Family Court and erred in so doing.[5]

As a first order of business, we attempt to untangle the various motions from the procedural morass that confronted the trial justice. The initial post-final-judgment motion was plaintiff's motion for relief from judgment under Rule 60(b)(1) based upon a theory of mutual mistake. In response thereto, defendant filed a motion for summary judgment denying the existence of any fact that would demonstrate a mutual mistake. It is clear, however, that plaintiff undeniably abandoned this argument at the September 21, 2021 hearing. Consequently, we deem plaintiff's appeal from the denial of her original motion for relief and from the grant of defendant's motion for summary judgment to be moot. Nor does plaintiff appeal from the denial of her motion to adjudge defendant in contempt. We confine our analysis, therefore, to the denial of plaintiff's "amended motion for relief from judgment and to compel entry of QDRO with survivorship language."[6]

---

[5] The plaintiff also asserts, with a one-sentence analysis, that the judgment from which she appeals is "final and appealable." The defendant has not challenged its appealability; nor do we.

[6] Rule 60(b)(1) of the Family Court Rules of Domestic Relations Procedure provides that a "court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for * * * reasons" of "[m]istake, inadvertence, surprise, or excusable neglect[.]" We question whether a motion under Rule 60(b)(1) is an appropriate vehicle to resolve what is essentially a question of contract interpretation. The defendant has defaulted, however, and thus has waived any objection to the motion's procedural propriety.

**Marital Settlement Agreement**

The plaintiff's first argument is brief and to the point: "[plaintiff] should receive the survivorship benefit because that is what the contract says." Contrary to plaintiff's argument, however, the "contract" does not expressly say that she should receive the survivorship benefits; rather, it is silent on the point. Nor was the issue discussed at the nominal divorce hearing; it simply was not addressed. The final judgment of divorce states that the agreement was "incorporated, but not merged," into the final judgment and "remain[s] as a separate, independent contract." "It is well settled that a property settlement agreement * * * retains the characteristics of a contract" under these circumstances. *Giarrusso v. Giarrusso*, 204 A.3d 1102, 1107 (R.I. 2019) (quoting *Esposito v. Esposito*, 38 A.3d 1, 5 (R.I. 2012)). The plaintiff's arguments therefore raise a question of contract interpretation, which requires that we "attempt to ascertain the intent of the parties." *Morgan v. Bicknell*, 268 A.3d 1180, 1183 (R.I. 2022) (quoting *Woonsocket Teachers' Guild, Local 951 v. School Committee of City of Woonsocket*, 117 R.I. 373, 376, 367 A.2d 203, 205 (1976)). If the parties' intention "'can be clearly inferred from' the terms and express language of the contract," then that intention governs. *Id.* at 1184 (quoting *Woonsocket Teachers' Guild*, 117 R.I. at 376, 367 A.2d at 205). If, however, a contract provision is "reasonably susceptible of different constructions," then it is ambiguous. *Id.* (quoting *Carney v. Carney*, 89 A.3d 772, 776 (R.I. 2014)). "When a provision in a

- 11 -

settlement agreement is ambiguous, * * * the practice of this Court is to adopt that construction which is most equitable and which will not give to one party an unconscionable advantage over the other." *Maccarone v. Maccarone*, 108 A.3d 1053, 1057 (R.I. 2015) (quoting *Janson v. Janson*, 773 A.2d 901, 903 (R.I. 2001)). "In the absence of ambiguity, the interpretation of a contract is a question of law." *Morgan*, 268 A.3d at 1184 (brackets omitted) (quoting *Andrukiewicz v. Andrukiewicz*, 860 A.2d 235, 238 (R.I. 2004)).

Based upon our *de novo* review of the record, we find the marital settlement agreement, as amended by the provision added to the decision pending entry of final judgment, to be ambiguous with respect to its inclusion, or not, of survivor benefits under defendant's federal civilian pension. The agreement speaks in terms of "*any* benefits such as COLAs and pre-retirement options attributable to her share," yet it omits any specific reference to survivor benefits. (Emphasis added.) We conclude, therefore, that it is susceptible to two reasonable meanings and is ambiguous.

It thus becomes necessary "to adopt th[e] construction which is most equitable and which will not give to one party an unconscionable advantage over the other." *Maccarrone*, 108 A.3d at 1057 (quoting *Janson*, 773 A.2d at 903). We begin our analysis by "examin[ing] both the circumstances surrounding the development of the ambiguous terms and the intentions of the parties." *DiPaola v. DiPaola*, 16 A.3d 571, 577 (R.I. 2011) (quoting *Flynn v. Flynn*, 615 A.2d 119, 121 (R.I. 1992)). The

- 12 -

parties acknowledge in the marital settlement agreement that, as of the date of that agreement, plaintiff had been living in Rhode Island and defendant in Virginia for sixteen years and that there had not been a "marital relationship" for eight years. Consequently, the parties had been living separate and apart during the entire period when defendant had been contributing to his federal civilian pension.

We also consider the transcript of the nominal divorce hearing, which was held on July 2, 2018. At the hearing, plaintiff affirmed that she would be receiving her marital share of any cost-of-living adjustments or early retirement benefits associated with "the retirement accounts." She did not mention any survivor benefits, however. Moreover, during defendant's direct examination, the following exchange transpired:

> "Q: You also understand with respect to the FERS plan, your wife will be entitled to one-half [*sic*] of what that pension would be worth as of today's date.
>
> "A: Yes.
>
> "Q: So as you continue to work, yours continues to grow, hers will end as of this date?
>
> "A: Yes."

The plaintiff made no attempt to cross-examine defendant or refute his testimony in any way.

We also consider the significance of the calculation end date, which the trial justice determined to be dispositive. Although the existence of the end date does not

automatically foreclose the possibility that plaintiff retains an interest in any survivor benefits, it is indicative of the parties' intention that plaintiff's interest in defendant's pension terminate as of June 30, 2018.

We next consider the significance of the sentence that the parties added to the pension provision during the nominal divorce hearing on July 2, 2018, which reads: "The [p]laintiff shall be entitled to receive any benefits such as COLAs and pre-retirement options attributable to her share." It is unclear whether the express reference to benefits "such as COLAs and pre-retirement options" makes it more or less likely that a survivor benefit is included. The provision is not just "reasonably susceptible of different constructions," *Morgan*, 268 A.3d at 1184, but indeed beset with ambiguities. We have on occasion employed the Latin maxim "*expressio unius est exclusio alterius*" for the "canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative." Black's Law Dictionary 726 (11th ed. 2019); *see, e.g.*, *Ryan v. City of Providence*, 11 A.3d 68, 75 (R.I. 2011). Because the agreement is ambiguous regarding whether plaintiff is entitled to a share of any survivor benefits in defendant's federal civilian pension, we must adopt the construction of the agreement that is most equitable to the parties in the case. *Maccarone*, 108 A.3d at 1057. This requires that we interpret the provision in the context of the parties' overall agreement, mindful of both the

- 14 -

circumstances surrounding the development of the provision and the intentions of the parties. *Id.*; *DiPaola*, 16 A.3d at 577.

Notwithstanding her statement about the plain language of the agreement, the trial justice appears to have followed these requirements when she made the four observations that anchored her analysis. First, the agreement "was negotiated over eight months with very competent attorneys * * *." Second, "the parties had been separated for 15 years * * *." Third, defendant's entire federal civilian pension "was earned during that separation * * *." And fourth, the attorneys and parties knew this information when drafting the agreement. These are factual findings of the trial justice and are entitled to deference. *See Maccarone*, 108 A.3d at 1056.

As for plaintiff's argument that the provision, if ambiguous, should be construed against defendant, she has cited no case in which a court has applied this rule of construction to a marital settlement agreement. Even if she had, whether plaintiff's proposed rule of construction applies to this case is another question altogether. The defendant's attorney presented to the Family Court the decision pending entry of final judgment, to be sure, but the parties presented the agreement as a joint exhibit during the nominal divorce hearing. As the trial justice noted, the agreement was negotiated by the parties, with counsel, over an eight-month period.[7]

---

[7] We also note that the trial justice made no finding as to which counsel was responsible for preparing the agreement.

Under these circumstances, we see no clear reason to conclude that defendant is the sole drafter of the agreement, much less that it should be construed against defendant.

With these observations in mind, and consistent with the holding of the Family Court, it is our opinion that plaintiff's interpretation of the ambiguous provision—entitling her to a share of any survivor benefits in defendant's federal civilian pension—does not provide the most equitable construction of the agreement. *See DiPaola*, 16 A.3d at 578. Rather, our *de novo* review of the marital settlement agreement and the undisputed facts lead us to conclude that the most equitable construction of the agreement does not entitle plaintiff to survivor benefits.

We are confronted in this case with a twenty-eight-year marriage during the final sixteen years of which the parties lived separately in different states—plaintiff in Rhode Island and defendant in Virginia. As they both acknowledged in the marital settlement agreement, they have "not had a marital relationship since 2010[.]" On July 2, 2018, they did execute said agreement, which purports "to adjust and settle between themselves all property rights and obligations growing out of the marital relationship * * *."

At the nominal divorce hearing, also on July 2, 2018, the parties agreed to add a provision to the agreement concerning any benefits attributable to plaintiff's share of defendant's federal civilian pension "such as COLAs and pre-retirement options

* * *." The agreement was silent, however, on the issue of survivor benefits. The trial justice found that the agreement "is a fair and equitable distribution of all of the marital assets and debts, and it shall be incorporated but not merged with the Final Judgment."

The trial justice also found "that the language is very plain that there is no survivorship, that all of [p]laintiff's rights to [d]efendant's pensions end on June 3[0], 2018." Although we disagree as to the clarity of the agreement with respect to survivor benefits, we are satisfied that the most equitable resolution, under these circumstances, is to declare that such benefits, if any, remain with defendant.

**Judicial Notice**

Finally, we arrive at the plaintiff's argument that the trial justice erred in taking judicial notice of defense counsel's experience litigating in the Family Court. This argument appears to concern the trial justice's observation that "[b]oth parties at all times had counsel. In fact, they each had very good counsel." Only certain kinds of facts are capable of judicial notice. R.I. R. Evid. 201(b). Just because the trial justice used the colloquialism, "[i]n fact," before expressing her opinion of the parties' respective counsel, however, does not constitute judicial error.

### III

### Conclusion

For the foregoing reasons, the judgment of the Family Court is affirmed.[8] The papers in this case may be remanded to the Family Court.

---

[8] Our analysis is hampered by the failure of defendant/appellee to participate in this appeal. He is unrepresented by counsel, has not filed any written submissions, and indeed has been defaulted. It is the robust dialogue of appellate advocacy that tends to sharpen issues and expose the meanings obscured in a party's agreement. Moreover, the record is silent with respect to the details of defendant's federal civilian pension. Facts that would be helpful to our analysis might include whether the payee receives a reduced sum during his lifetime if he elects the survivor benefit and if the election of survivor benefits can be made at any time during employment or only at the time of retirement. We stress, therefore, that our holding herein is predicated upon the unique circumstances of this case.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Nancy Robayo v. Luis Robayo. |
| **Case Number** | No. 2022-228-Appeal.<br>(P 17-4447) |
| **Date Opinion Filed** | March 12, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer from Lower Court** | Associate Justice Patricia K. Asquith |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Christopher M. Lefebvre, Esq. |
| | For Defendant:<br><br>Luis Robayo, *pro se* |