**Lucille D. FURIA,**

v.

**Richard A. FURIA.**

**No. 96–56–Appeal.**

Supreme Court of Rhode Island.

April 9, 1997.

See also 638 A.2d 548.

**328**

Sandra H. Smith, Warwick, for Plaintiff.

Christopher L. Russo and Paul J. Russo, Cranston, for Defendant.

Before: WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on March 7, 1997, pursuant to an order that directed the plaintiff, Lucille D. Furia, and the defendant, Richard A. Furia, to show cause why the issues raised in this appeal should not be summarily decided. The plaintiff has appealed from a Family Court order that directed her to make certain payments to the defendant, her former husband, based on the value of the plaintiff's teacher's pension.

After hearing the arguments of counsel and reviewing the memoranda submitted by the parties, we are of the opinion that cause has not been shown, and the appeal will be decided at this time.

In May 1992, in a decision pending entry of final judgment, a Family Court justice granted the parties a divorce on the grounds of irreconcilable differences and provided for the equitable distribution of most of the marital property. The trial justice reserved a decision on the distribution of plaintiff's teacher's pension, pending this Court's opinion on the issue of the equitable distribution of a spouse's pension. In *Moran v. Moran,* 612 A.2d 26, 33 (R.I.1992), this Court held that the pension of a public school teacher was subject to equitable distribution. Our decision in *Moran,* however, did not apply to the instant case in which plaintiff, although vested in her pension plan, has chosen not to retire. Therefore, the Family Court justice certified to this Court the question of whether a nonparticipating spouse had a right to receive pension benefits from the state employees' retirement system before the partic-

ipating spouse actually retired. *Furia v. Furia,* 638 A.2d 548 (R.I.1994)(*Furia I* ). This Court held that, although defendant was not entitled to collect the pension benefits per se before plaintiff retired, "depending on the equitable distribution by the Family Court, Mr. Furia may not have to wait until Ms. Furia retires to begin collecting the value of the benefits he would receive if she did retire." *Id.* at 553.

Subsequent to our decision, the Family Court justice awarded to defendant one-half of the approximately $450,000 actuarial value of plaintiff's pension and ordered plaintiff to pay defendant $30,000 by January 31, 1996, and to execute a promissory note for $180,-987.50, including interest at 7 percent per year. The justice ordered plaintiff to pay monthly amounts not to exceed $1,250, with a balloon payment for the total balance due one month after plaintiff attained sixty-five years. The interest on the note was made tax deductible to plaintiff and reportable as income by defendant. An order encompassing this decision was entered on December 5, 1995, and plaintiff timely appealed.

On appeal, plaintiff contended that the trial justice erred by ordering her to begin paying defendant 50 percent of the value of her total pension prior to her receiving any value from that asset. On the basis of our holding in *Furia I,* the trial justice clearly had the authority to award to defendant the value of his share of plaintiff's pension, but not to distribute the cash value of plaintiff's total lifetime pension before, or at, the time of plaintiff's retirement. We expand our ruling in *Furia I* to hold that the proper distribution of plaintiff's pension is the payment each month by plaintiff to defendant of an amount equal to one-half of the monthly pension benefits that plaintiff *would* have received had she chosen to retire as of December 5, 1995, the date the trial justice entered the original order for the distribution of the pension. After her retirement, plaintiff should continue to pay defendant one-half of her *actual* pension benefits on a monthly basis throughout her retirement. The defendant will pay taxes on the monthly payments received from plaintiff. We are of the opinion

that such a payment schedule represents a fair allocation of this marital asset.

The trial justice's interpretation of our holding in *Furia I* resulted in his allocating plaintiff's pension as if it were a lump-sum payment to her of $455,675.13, the actuarial estimated cash value of the pension benefits plaintiff would receive throughout her life if she had retired in December 1995 and lived out her putative life expectancy. We are of the opinion that such a distribution would result in an inequitable distribution of plaintiff's actual pension benefits if, for instance, plaintiff were to die before retiring and never collect any actual pension benefits. In that event, defendant would have already received one-half of the estimated value of plaintiff's lifetime pension. Likewise, if plaintiff were to die two months after retiring, she would have collected virtually none of her pension benefits, but defendant would have received one-half of the total value of the pension.

We need not address the plaintiff's remaining issues inasmuch as they derive from her objection to the allocation of pension benefits that we have revised.

Therefore, we sustain the plaintiff's appeal, vacate the Family Court order of distribution of the plaintiff's pension, and remand the case to the Family Court with directions to enter judgment in accordance with this opinion.