Lucille D. **FURIA**

v.

Richard A. **FURIA**

and

**Employees' Retirement System of the State of Rhode Island.**

No. 93–133–A.

Supreme Court of Rhode Island.

March 14, 1994.

Alan T. Dworkin (Sandra H. Smith, argued), Alan T. Dworkin Ltd., Warwick, for plaintiff.

Alfred Factor (Christopher L. Russo, argued), Kirshenbaum & Kirshenbaum, Cranston, for defendant.

William R. Grimm, Robert M. Duffy, Hinckley, Allen & Snyder, Cranston, for Employees' Retirement System.

## OPINION

MURRAY, Justice.

This matter came before this court on a certified question from the Family Court pursuant to G.L.1956 (1985 Reenactment) § 8–10–43 and G.L.1956 (1985 Reenactment) § 9–24–27. The question arose in the context of a Family Court justice's attempt to effect an equitable distribution of the marital property of Lucille D. Furia (Ms. Furia) and Richard A. Furia (Mr. Furia) in their divorce proceeding. The facts necessary to reply to the certified question are set forth below.

At a hearing in July 1991, the Family Court justice made numerous findings of fact, including the following. The parties had been married since 1964. Mr. Furia was a self-employed certified public accountant whose annual income ranged from $40,000 to $70,000 and who was fifty-one or fifty-two years old. Ms. Furia was a teacher in the Providence school system and was approximately fifty years old. She had a master's degree in education and was enrolled in a master's-degree program in administration.

She had earned a total income in excess of $43,000 the previous year.

Ms. Furia was hired in 1963, and her pension plan had been valued from $100,000 to $335,000. One of the valuations of her pension plan was based on several assumptions, including the following: (1) that she would be eligible for retirement as of June 1992 because she would have accumulated twenty-eight years of service by that point and (2) that she was fully vested in the retirement system.

In a decision pending entry of final judgment, the Family Court justice granted both the complaint and the counterclaim on the grounds that irreconcilable differences existed that caused the irremediable breakdown of the Furias' marriage. He proceeded to craft an equitable distribution of the marital property, including the marital domicile, Mr. Furia's accounting practice, and two automobiles. The justice decided to reserve a decision on the distribution of Ms. Furia's pension until this court rendered a decision in another case involving the equitable distribution of a spouse's pension.

As for Mr. Furia's pension, valued at approximately $99,000, the Family Court justice ordered that Mr. Furia receive the first $47,000 and that Mr. and Ms. Furia share equally in the balance. The justice decided not to order the distribution of Mr. Furia's pension, however, until the division of Ms. Furia's pension because Mr. Furia was entitled to a substantial portion of her pension. At a hearing in 1992, prior to this court's decision in the pending pension case, the Family Court justice ordered that Ms. Furia be restrained from alienating or borrowing on her pension plan.

This court ruled in the pending pension case, *Moran v. Moran,* 612 A.2d 26, 27, 33 (R.I.1992), that the pension of a public school teacher (and later principal) was subject to equitable distribution. We affirmed the Family Court's award of a one-half interest in the pension to the nonemployee spouse. *See id.* at 31–33.

In 1993 the Family Court justice certified the following question to this court:

"Whether the non-participating spouse has a right to receive pension benefits pursuant to a Qualified Domestic Relations Order [1] retirement date of the participatory spouse in a TEACHER'S/STATE pension or must he wait until his spouse actually retires and receives pension benefits?"

The justice stated that counsel for the Furias, as well as counsel for and a representative of the Employees' Retirement System of the State of Rhode Island (ERS), had conferred with him on several occasions to draft a "Qualified Domestic Relations Order" (QDRO) but that ERS refused to divide the pension plan into two plans and prematurely grant benefits to one spouse. By order of the Family Court, the ERS was made a party because it took the position that it would not comply with a QDRO mandating the disbursement of Ms. Furia's benefits to Mr. Furia prior to her separation from service. The justice noted that Ms. Furia was eligible under G.L.1956 (1990 Reenactment) § 36–10–9, as amended by P.L.1993, ch. 231, § 2, to collect her pension but that she had not yet "separated from service," that is, retired, in accordance with the statute.

Section 36–10–9 provides in relevant part:

"Retirement of a member on a service retirement allowance shall be made by the retirement board as follows:

(a) Any member may retire upon his or her written application to the retirement board as of the first day of the calendar month in which the application was filed; provided, the member was separated from service prior thereto * * * and provided further that the member on his or her retirement date * * * regardless of age, has completed twenty-eight (28) years of total service."

The Furias' posture in this court is rather unusual because they advocate the same result at this level of their divorce proceedings. They both seek an affirmative answer to the first part of the certified question, that is, whether Mr. Furia may receive a portion of Ms. Furia's pension benefits pursuant to a QDRO before Ms. Furia's retirement date.

1. Our understanding of this question includes the    words "prior to the" at this point.

Ms. Furia argues that a nonparticipating spouse may receive pension benefits at the earliest retirement date of the participating spouse because the nonparticipating spouse is not a member of the plan and therefore need not be separated from service to receive benefits by way of a QDRO. She asserts that Mr. Furia could begin collecting his portion of her pension now, regardless of whether she presently retires, if her pension were governed by the QDRO provisions of the federal Employee Retirement Income Security Act (ERISA). *See* 29 U.S.C.A. § 1056(d) (West Supp.1993). If this court does not permit Mr. Furia to collect his share of her pension whether or not she separates from service, she contends, that denial "would fly in the face of *Moran,* creating inequities within the family unit." She further maintains that the statute providing for separation from service did not contemplate that a pension would be considered a marital asset subject to equitable distribution by a court and did not contemplate the possible application of a QDRO to such a pension. She advocates legislative revision of the pension code to subject these pensions to the same procedures as private and federal pensions. Until that happens, she seeks a broad interpretation of the statute. She claims that public-sector and private-sector employees should receive benefits in the same manner.

Mr. Furia claims that § 36–10–9 does not apply to the nonparticipating spouse because he is not a "member" of the plan. He contends that this court has the authority, if it finds that § 36–10–9 does not apply to him, to hold that ERS must comply with a QDRO. He argues that Ms. Furia's choice to continue working should not preclude him from collecting his share of her pension until she decides to retire. He asserts that as the nonparticipating spouse, he should receive his portion of the pension proceeds at the earliest time that she is eligible to receive her benefits. If ERISA governed here, he states, he would be entitled to begin collecting his share through a QDRO. Ordering that Mr. Furia is entitled to receive the pension benefits now is a logical extension of this court's holding in *Moran,* he maintains.

The ERS contends that in the absence of a legislative amendment to the retirement-benefit statute, the Family Court cannot distribute a pension to a nonemployee/nonmember spouse before the employee/member spouse's separation from service. It asserts that it has no statutory authority on which to base an administrative decision to comply with a Family Court order distributing pensions that are not in pay status and that are not available to its members. It is outside the scope of the retirement board's administrative discretion to rewrite the law of pension eligibility. The ERS further argues that it would be fiscally imprudent to mandate that the retirement board pay out pension funds that are not due and that such a requirement would be an obligation different from the purpose for which the retirement system was established.

In discussing Ms. Furia's pension, the parties refer mainly to certain sections of the General Laws that govern the state employees' retirement system, especially § 36–10–9. We note that a separate chapter of the General Laws governs the retirement of teachers in municipal public schools. *See* G.L.1956 (1988 Reenactment) chapter 16 of title 16. Section 16–16–12, as amended by P.L.1993, ch. 231, § 3, contains a provision that is almost identical to § 36–10–9(a), quoted above, but governs teachers' retirement. Additionally, § 16–16–23 provides that, except in circumstances in which chapter 16 of title 16 specifically states otherwise, the provisions of title 36, chapters 8 to 10, inclusive, apply to persons who are "members" of the retirement system under chapter 16 of title 16.

The general retirement-system statute also contains an antialienation provision. Section 36–10–34 provides in relevant part that "[a]ny and all retirement benefits and contributions in the state employees' and municipal employees' retirement systems shall be exempt from lien, attachment, or garnishment and shall not be transferable or assignable * * *." The *Moran* court held that this antialienation provision did not exempt the husband's pension (he was a teacher and then a principal in a municipal public school) from equitable distribution in the context of a

divorce proceeding. *See Moran*, 612 A.2d at 27, 33. *Moran* involved the appeal of a Family Court award to Ms. Moran of a one-half interest in Mr. Moran's pension plan, which distribution was to be by way of a "QDRO." *See id.* at 31, 32. Adopting the rationale of a Pennsylvania case, we agreed with the view that it would be unfair and contrary to legislative intent to interpret this exemption or antialienation statute in a manner that would preclude a former spouse from receiving support from a fund created for the benefit of the retired employee and his or her family. *See id.* at 33. However, we never intended to order or uphold an order of the distribution of pension funds that violated or circumvented the requirements of § 36–10–9.

As this court has stated, a pension is analogous to "a forced savings account [the] funds [of which] will become available to the parties upon retirement." *See Stevenson v. Stevenson*, 511 A.2d 961, 965 (R.I.1986). We have also specified that, as with all other marital assets, the nature and quality of the particular pension must be evaluated in light of the factors set forth in the equitable distribution statute, G.L.1956 (1988 Reenactment) § 15–5–16.1, as amended by P.L.1992, ch. 269, § 2. *See Stevenson*, 511 A.2d at 965 n. 4.

We are mindful that our primary task in this case is to reply to the certified question from the Family Court. This is an interlocutory proceeding, as the parties' case is still pending before the Family Court.

▮ Before we answer each part of the certified question, we think it necessary to note some general propositions of law to help guide our analysis of and attempt to reconcile the powers of two governmental bodies, that is, the Family Court and the ERS. The Family Court possesses limited jurisdiction, and its authority to take action in a specific situation or to provide a particular type of relief must be granted by statute. *Adam v. Adam*, 624 A.2d 1093, 1098 (R.I.1993). Additionally, administrative agencies are not authorized to modify the statutory provisions under which they acquired power absent clear legislative intent. *See Little v. Conflict of Interest Commission*, 121 R.I. 232, 236, 397 A.2d 884, 886 (1979). Finally, it is not the Supreme

Court's function to rewrite or amend statutes that the General Assembly enacted. *Rhode Island Federation of Teachers, AFT, AFL–CIO v. Sundlun*, 595 A.2d 799, 802 (R.I.1991).

▮ We now respond to the first part of the certified question, that is, whether Mr. Furia, the nonparticipating spouse, has a right to receive teachers'/state pension benefits pursuant to a QDRO before the retirement date of Ms. Furia, the participatory spouse. Under *Moran*, the pension is subject to equitable distribution. *See Moran*, 612 A.2d at 33. The intent of property division is to assign the marital assets fairly on the basis of the joint contribution, both monetary and non-monetary, of the spouses to the marriage. *See Stanzler v. Stanzler*, 560 A.2d 342, 345 (R.I.1989). The court is not required to divide the property equally, however. *See id.*

We think that Mr. Furia is entitled to collect the *value* of his portion of the pension benefits, but not necessarily the pension benefits per se. The Furias' argument that Mr. Furia should be able to collect the pension benefits now because he is not a "member" of the pension plan and therefore is not subject to § 36–10–9 ignores the derivative nature of his interest. Indeed, he is not a member of the plan, but his right to collect any of the plan's benefits exists only by virtue of his relationship with a member.

▮ Section 36–10–9 provides a mechanism by which Ms. Furia, as a member of the plan, can trigger the flow of her retirement benefits. *Moran* is silent regarding the effect of this statute on the equitable distribution of a pension. In the absence of a legislative direction to the contrary, we cannot order what the Furias seek with respect to Ms. Furia's pension. We agree with the argument of ERS that the Family Court cannot distribute a pension to the nonemployee/nonmember spouse before the employee/member spouse separates from service. The Family Court can, however, award to Mr. Furia the value of the benefits in one of several possible ways available to it generally for the distribution of marital assets.

Parenthetically, we note that although *Moran* referred to the distribution of Mr. Moran's pension by way of a QDRO, *see Moran,* 612 A.2d at 31, 32, technically a QDRO is a creature of ERISA. *See* 29 U.S.C.A. § 1056(d). The QDRO provisions of ERISA do not apply here because governmental pension plans are not subject to them. *See* 29 U.S.C.A. §§ 1002(32) and 1003(b)(1) (West 1985 & Supp.1993). The Family Court may issue an order with the "characteristics" of a QDRO. However, such a "QDRO" serves only as a technique for determining the value of this marital asset in the process of distribution.

To interpret the pension statute as broadly as Ms. Furia advocates would be effectively to draft a different statute. To read into our statute the ERISA provisions that would, according to the Furias, enable Mr. Furia to receive Ms. Furia's pension benefits at this time would be to amend our statute without the action of the Legislature. Neither we nor the Family Court can engage in an invasion of § 36–10–9 by court action. We therefore answer the first part of the certified question in the negative.

Our response to the second part of the question, whether Mr. Furia must wait until his spouse actually retires and receives benefits, is qualifiedly in the negative. As noted above, the Family Court is empowered to craft an equitable distribution of the marital property, including the pension plan. We think that the employee/spouse should not unilaterally deprive the nonemployee/spouse of his or her property if the Family Court decides to award a portion of the pension to the nonemployee/spouse. Therefore, although we cannot order ERS to comply with a mandate from the Family Court to pay Mr. Furia his share before Ms. Furia retires, depending on the equitable distribution by the Family Court, Mr. Furia may not have to wait until Ms. Furia retires to begin collecting the value of the benefits he would receive if she did retire. *See Koelsch v. Koelsch,* 148 Ariz. 176, 185, 713 P.2d 1234, 1243 (1986) (en banc). He would, however, have to wait until she retires to collect the pension benefits per se.

For the foregoing reasons, we conclude that the nonparticipating spouse has no right to receive pension benefits pursuant to a QDRO before the retirement date of the participatory spouse in a teacher's/ state pension plan. We also determine that the nonparticipatory spouse is not necessarily required to wait to collect the value of the pension benefits but is required to wait until the employee/spouse retires in order to receive actual pension benefits. The papers in this case are remanded to the Family Court for further proceedings consistent with this opinion.