John H. JANSON

v.

Patricia J. JANSON.

No. 99–490–Appeal.

Supreme Court of Rhode Island.

June 25, 2001.

---

William F Holt, Cranston, for Plaintiff.

Robert M. Brennan, Rocky Hill, CT, for Defendant.

Present WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

In this divorce dispute, the defendant, Patricia J. Janson (wife), appeals from the Family Court's denial of her motion to obtain a share of the pension benefits available to the plaintiff, John H. Janson (husband) and from the entry of a Qualified Domestic Relations Order (QDRO). The parties were directed to show cause why the issues raised by this appeal should not be summarily decided. Because neither party has done so, we proceed to decide the appeal at this time.

The husband and wife were married on September 30, 1966. Although their marriage produced four children, only one of them, Kerri (born September 26, 1981), was a minor on July 3, 1995, when the husband filed this action. In January 1998, after a hearing on the merits, the parties reached a property-settlement agreement. On May 14, 1998, this agreement was embodied in an amended decision pending entry of final judgment (decision). The decision awarded both parties joint custody of their minor child, with the wife having physical possession of the child and the husband having reasonable rights of visitation. Pursuant to the decision, the parties also agreed that the husband's retirement benefits would be divided, with 60 percent awarded to the husband and 40 percent awarded to the wife. The award was to be accomplished by the issuance of a QDRO.

More than one year later, on July 6, 1999, the husband filed a motion seeking to enter the final judgment out of time and to enter the QDRO. On July 12, 1999, the wife filed a motion seeking her portion of the husband's pension benefit as if he had retired, asserting that the husband was eligible to retire as of May 1999. The Family Court heard both motions on August 3, 1999. At the hearing, the wife also sought to have the QDRO encompass pension benefits that her husband had accrued for the period starting with the date his employment began through the date of entry of the final judgment of divorce, rather than through January 16, 1998, the date of the parties' settlement agreement that allocated the husband's pension benefits. After argument by counsel, the trial justice granted the husband's motion and declined to rule on the wife's motion. The final judgment of divorce and QDRO entered on August 3, 1999. The QDRO provided that the "[p]articipant [husband] shall assign Forty (40%) Percent of his retirement benefit from the Rhode Island State Employee's Pension Plan to the Alternate Payee [wife]" and that the "payments to the Alternate Payee [wife] shall be made in accordance with the plan." After the entry of the final judgment and QDRO, the wife filed her timely notice of appeal.

Because the court did not enter a formal order concerning the denial of the wife's motion to expand the QDRO, we remanded the appeal for the entry of such an order. On January 25, 2001, an order entered in which the Family Court denied the wife's

motion and made the following findings of fact:

"1. The decision pending entry of final decree provides for a sixty/forty (60/40) split of the pension benefits of the Plaintiff. Defendant is to receive forty percent and Plaintiff 60 percent.

"2. The Qualified Domestic Relations Order presented by Plaintiff's counsel is in accordance with the Decision Pending Entry of Final Decree.

"3. The court didn't order anything other than a sixty/forty (60/40) split, which it seems logic would say that the sixty/forty (60/40) split cannot take place until the plan says it can."

■ On appeal, the wife argues that the trial justice's refusal to hear her motion and the court's subsequent entry of the QDRO constituted reversible error. She further contends that the husband became eligible to terminate his employment and to begin collecting retirement benefits in May 1999 and that the trial justice "failed to recognize that the [husband] acquired a substantial right in May of 1999 that he didn't possess on January 16, 1998." The wife maintains that she is now entitled to her share of the husband's pension benefits. In support of this position, the wife relies upon the cases of *Furia v. Furia*, 638 A.2d 548 (R.I.1994) (*Furia I*), and *Furia v. Furia*, 692 A.2d 327 (R.I.1997) (*Furia II*).

In *Furia II*, this Court concluded that even though the Family Court possessed the authority in equitably distributing the marital assets to award the defendant husband the value of his share of his former wife's pension, it could not order that the cash value of the wife's pension be distributed before or at the time of the plaintiff wife's retirement. 692 A.2d at 328. Expanding upon our ruling in *Furia I*, we held that the proper distribution of the plaintiff's pension "is the payment each

month by plaintiff to defendant of an amount equal to one-half of the monthly pension benefits that plaintiff *would* have received had she chosen to retire." *Id.* The Court also held that the plaintiff should continue to pay her former husband one-half of her actual monthly pension benefits after she retired. *Id.*

■ Here, the parties' settlement agreement, as it was embodied in the May 1999 decision pending entry of final judgment, was ambiguous or silent about the valuation date of the husband's pension and when the wife would be entitled to receive her share of this benefit. When a provision in a settlement agreement is ambiguous, we have held that "the practice of this Court is to 'adopt that construction which is most equitable and which will not give to one party an unconscionable advantage over the other.'" *Flynn v. Flynn*, 615 A.2d 119, 122 (R.I.1992) (quoting *Antone v. Vickers*, 610 A.2d 120, 123 (R.I.1992)). In determining which construction of the decision's and the agreement's ambiguous pension provisions would be "most equitable" to the parties in this case, we must interpret them in the context of the parties' overall agreement concerning the distribution and valuation of the entire marital estate. Ultimately, the ambiguity should be resolved such that the final division of the entire marital estate is consistent with the unambiguous portions of the parties' property-settlement agreement and with the principles underlying an equitable distribution of that estate.

Thus, because the parties' property-settlement agreement and the court's decision were silent with respect to when the wife was entitled to receive either actual or equivalent pension payments, the trial justice should have resolved the ambiguity based upon principles of equitable distribution rather than simply adopting, without sufficient explanation or justification, the

husband's preferred reading of the agreement. In this case, the parties divided all the marital property on a 60/40 basis and the decision provided that the wife was entitled to receive 40 percent of the husband's pension benefits. But the agreement and the decision were silent about when the wife should begin to receive those benefits. In *Furia I,* we held that, when crafting an equitable distribution of marital property, "the employee/spouse should not unilaterally deprive the nonemployee/spouse of his or her property if the Family Court decides to award a portion of the pension to the nonemployee/spouse." *Furia I,* 638 A.2d at 553. Therefore, in the absence of a clear agreement specifying how and when the husband's pension was to be valued and distributed to the wife, we hold that it was inequitable for the trial justice to allow the husband to "unilaterally deprive" the wife of her share of the pension by delaying his retirement until some uncertain date in the future when he might decide to retire. Although the wife was "not entitled to collect the pension benefits per se before the [husband] retired," the trial justice clearly had the authority under *Furia II* to effectuate an equitable distribution of this benefit by awarding the wife her equivalent share of the monthly pension payments that the husband would have received if he had retired in May 1999, when he was initially eligible to do so. *Furia II,* 692 A.2d at 328.

■ The wife's second claim of error is that the trial justice erred in refusing to allow her to receive 40 percent of the accrued value of the husband's monthly pension benefits through the entry date of the final divorce decree. The QDRO that the court ultimately entered provided that the wife "shall receive a Forty (40%) Percent survivors benefit of Participant's enrollment from the date of his employment through January 16, 1998." Although the parties entered into this agreement in January 1998, the wife argues that they remained married until the entry of the final judgment of divorce on August 3, 1999. She contends that the trial justice's refusal to grant to her a share of the value of her husband's accrued pension benefits from January 16, 1998, through the August 3, 1999, entry of the final divorce decree is contrary to both statutory and case law.

■■ We have held that the "parties to a divorce action remain as husband and wife until the entry of the final decree of divorce." *Giha v. Giha,* 609 A.2d 945, 948 (R.I.1992) (quoting *Alix v. Alix,* 497 A.2d 18, 20 (R.I.1985)). The Family Court justice retains broad discretion to divide the marital property justly and fairly between the parties. *See Thompson v. Thompson,* 642 A.2d 1160, 1162 (R.I.1994). Here, the husband's proposed QDRO and the final judgment provided that the wife shall receive pension benefits on the accrued value of the husband's pension through January 16, 1998. Both the agreement and the decision, however, were silent concerning the date when the wife would begin to receive her share of pension benefits. Moreover, the trial justice made no findings about his rationale for selecting the January 16, 1988 date he used in valuing the husband's pension. The trial justice simply entered the final judgment and the husband's proposed QDRO without explaining why he elected to use the date of the parties' settlement agreement, rather than the date of entry of the final judgment for valuing the QDRO. Because the parties were still married at the time of the entry of final judgment and their property rights in each other's estate continued to exist through that date, we conclude that, absent an express agreement to the contrary, the trial justice erred in ruling that the wife's right to share in the value

of plaintiff's pension terminated as of the date of the agreement. *See Saback v. Saback,* 593 A.2d 459, 461 (R.I.1991) (holding that "[j]ustice demands that a careful assessment of marital assets *as of the time of the entry of judgment* be ascertained and that an equal division thereof be made"). (Emphasis added.)

For the reasons stated above, we sustain the wife's appeal, vacate the challenged orders, and remand the matter to the Family Court with instructions to proceed to enter new orders and decrees in accordance with this Court's opinion. Specifically, for purposes of calculating the wife's 40 percent share of the pension, the husband's pension plan assets should be valued as of August 3, 1999, the date of entry of the final divorce decree; the court should issue an order with the characteristics of a QDRO distributing to the wife 40 percent of the monthly pension benefits that the husband would have been entitled to receive if he had retired as of May 1999, including an award of benefits retroactive to that date, plus interest thereon. Thereafter, following the husband's retirement, he should continue to pay his former wife 40 percent of his actual monthly pension benefits via an appropriate QDRO that so provides.