Paul J. ANDRUKIEWICZ

v.

Georgia D. ANDRUKIEWICZ.

No. 2002–395–Appeal.

Supreme Court of Rhode Island.

Nov. 12, 2004.

Gregory P. Sorbello, for plaintiff.

David E. Revens, Warwick, for defendant.

Present: WILLIAMS, C.J., GOLDBERG, SUTTELL, and ROBINSON, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court for oral argument on October 5, 2004, on appeal by the plaintiff, Paul J. Andrukiewicz (Paul or husband), from a Family Court judgment in favor of the defendant, Georgia D. Hopkins (formerly known as Georgia D. Andrukiewicz) (Georgia or wife). In post-final judgment divorce proceedings, Georgia sought relief to enforce the terms of the parties' property settlement agreement. The Family Court found that the term "normal retirement date," as used in the parties' property settlement agreement, relates to the date that the husband became eligible to retire, rather than when the husband might elect to retire. For the reasons set forth herein, we affirm the judgment of the Family Court.

## Facts and Travel

The parties were married on May 4, 1978; Paul commenced an action for divorce against his wife in Kent County Family Court in January 1993. The husband and wife entered into a written property settlement agreement (agreement) on June 28, 1994, and on July 12, 1994, the Family Court entered a decision pending entry of final judgment dissolving the marriage. The agreement was incorporated, but not merged, into the final decree of divorce. The agreement provides in part:

> "The Husband agrees and acknowledges that the Wife will receive the first $583.00 of the monthly benefit that he will be entitled to receive at the time of his normal retirement date under the Husband's Pension Trust Benefit Plan that he has through the Town of Coventry known as Annuity Contract (3) 31973.
>
> * * *
>
> The parties agree that the Family Court shall retain jurisdiction in regard to the distribution of this benefit plan for the benefit of the Husband and Wife as might be necessary to establish or maintain the terms of this Agreement as a 'Qualified Domestic Relations Order.'"

The agreement also expressly provided that it was executed in Rhode Island and that Rhode Island law governed the interpretation of its terms. The parties agreed that the Family Court would retain jurisdiction as it relates to the distribution of Paul's pension.

An amended qualified domestic relations order was entered by the Family Court on May 22, 1995, which incorporated the agreement into its terms. The order provides in relevant part:

"6.A. Each of the parties is hereby awarded an interest in and to the plan with the former wife Georgia D. Andrukiewicz a.k.a. Georgia D. Loomis/alternate payee's interest to consist of the first $583.00 per month that the participant be entitled to receive at the time of his normal retirement. Husband/participant's interest will consist of the balance of those monies above and beyond the first $583.00 per month that the alternate payee/former wife will be receiving from the participant's retirement account."

The evidence before the hearing justice disclosed that the Principal Mutual Life Insurance Company, the insurers of the husband's pension plan, provided plaintiff with a document entitled "Town of Coventry Police Pension Trust Benefit Plan Report as of January 1, 1997 Annuity Contract Number (3) 31973" (report). The report contained a benefit summary informing the husband that, "[y]our monthly earned benefit, as of January 1, 1997, is $1,493.27. You are past *your normal retirement date* and may begin receiving your benefit anytime you choose." (Emphasis added.)

Francis A. Frobel, the town manager of Coventry and the chief executive officer of the Town of Coventry Police Pension Trust, testified that the "normal retire-

ment date," for the purposes of Paul's pension plan, is at twenty years of service.

The husband testified that he became eligible for retirement on March 1, 1996, but had not yet retired. He could not collect his pension while still employed. As of February 2002, the husband testified, he had not made any payments to the wife.

After a hearing, the Family Court entered judgment in favor of the wife on April 30, 2002. The hearing justice found that the agreement was a valid contract entered into knowingly and voluntarily at the time of divorce. The hearing justice declared that the husband was obligated to pay the wife $583 every month after he became eligible for his retirement and that, under the terms of the agreement, the husband should have made the first payment of $583 to the wife on April 1, 1996. The Family Court ordered the husband to "pay to the defendant the sum of $41,976.00 for the period covering April 1, 1996 through March of 2002 plus statutory interest on those payments totaling $14,901.48," and also, "to begin making current payments to the defendant from his ordinary income at the rate of $583 per month beginning on April 1, 2002 and continuing thereafter until such time that a garnishment order has been entered against his income."

### Issues Presented

On appeal, the husband assigns three grounds of error and argues that this Court should vacate the prospective and retroactive payment orders of the Family Court. First, the husband alleges that the terms of the agreement are ambiguous and, therefore, the Family Court must construe the ambiguous contract language to avoid an inequitable and unconscionable result. *Flynn v. Flynn*, 615 A.2d 119 (R.I. 1992). Second, the husband challenges the

Family Court's reliance upon *Furia v. Furia*, 638 A.2d 548 (R.I.1994) (*Furia I*), and *Janson v. Janson*, 773 A.2d 901 (R.I.2001) (per curiam), to order a retroactive award against the husband. Alternately, the husband contends that the doctrine of laches bars the wife from receiving retroactive relief.

## Discussion

■ The record discloses that the value of the husband's pension benefits constitut-. ed a significant marital asset in which both parties held an interest. The husband acknowledges that the agreement he executed provides that the wife will receive $583 each month as of his normal retirement date. The husband contends that the language of the agreement concerning his "normal retirement date" is ambiguous and is capable of more than one interpretation.

■ In *Riffenburg v. Riffenburg*, 585 A.2d 627, 630 (R.I.1991), this Court held that when a Family Court justice incorporated by reference, but explicitly did not merge, a property settlement agreement into the final divorce judgment, the property settlement agreement retains the characteristics of a contract.[1] In the absence of ambiguity, the interpretation of a contract is a question of law, and its interpretation will be reviewed by this Court *de novo*. *Singer v. Singer*, 692 A.2d 691, 692 (R.I.1997) (mem.).

■ "[A] contract is ambiguous if it is 'reasonably susceptible of different constructions.'" *Flynn*, 615 A.2d at 121 (quoting *Antone v. Vickers*, 610 A.2d 120, 123 (R.I.1992)). It is well settled that "[w]hen contract language is clear and unambiguous, words contained therein will be given their usual and ordinary meaning and the parties will be bound by such meaning." *Singer*, 692 A.2d at 692 (citing *Aetna Casualty & Surety Co. v. Graziano*, 587 A.2d 916, 917 (R.I.1991)). "When a contract is unambiguous * * * the intent of the parties becomes irrelevant." *Hilton v. Fraioli*, 763 A.2d 599, 602 (R.I.2000) (per curiam) (quoting *Vincent Co. v. First National Supermarkets, Inc.*, 683 A.2d 361, 363 (R.I.1996) (per curiam)).

We deem the language of paragraph fifteen of the agreement, directing that the wife "will receive the first $583.00 of the monthly benefit that he will be entitled to receive at the time of his normal retirement date under the Husband's Pension Trust Benefit Plan," to be clear and unambiguous. Under its plain and ordinary meaning, the husband's "normal retirement date" is when he is eligible to retire under his pension plan, at which point "he will be entitled to receive" a monthly benefit. We agree with the Family Court that, based on the testimony of the town officials as well as the documentary proof, "it was clearly established that [plaintiff's] normal retirement date was March 1, 1996 and that he was beyond his normal retirement date."[2]

---

1. In *Riffenburg v. Riffenburg*, 585 A.2d 627, 630 (R.I.1991), this Court held that "the judiciary is without authority to modify alimony in a nonmerged separation agreement."

2. We note that, although G.L.1956 § 28–46–2 does not apply to this dispute, in its definition of "normal retirement benefit," this section refers to the "normal retirement age" as the age prescribed by the pension plan. Section 28–46–2 provides, "(8) 'Normal retirement benefit' means that benefit payable under a pension plan in the event of retirement at the normal retirement age as prescribed by the plan." Pursuant to § 28–46–2, a person's normal retirement age may be different from the employee's age at the time of his/her actual retirement. Likewise, we ascribe a meaning to "normal retirement date" that is consistent with the treatment given to the term "normal retirement" in § 28–46–2: the date prescribed by the pension plan, rather than the employee's actual retirement date.

When ascertaining the usual and ordinary meaning of contractual language, every word of the contract should be given meaning and effect; an interpretation that reduces certain words to the status of surplusage should be rejected. *See Employers Mutual Casualty Co. v. Pires,* 723 A.2d 295, 298 (R.I.1999). If the agreement was drafted to distribute the value of the husband's pension benefit to the wife commencing on the date the husband actually retires, as plaintiff argues, the phrase "retirement date" or "actual retirement" would have been employed. When read in its entirety, paragraph fifteen of the agreement provides that the wife *"will receive"* a portion of what the husband *"will be entitled to receive* at the time of his normal retirement," not when he actually retires. (Emphasis added.) The husband misconstrues that meaning of "normal." To give meaning to the word "normal," the expression "normal retirement date" cannot refer to the husband's personal choice of what date to retire, but the date that every participant under this pension plan shares: after twenty years of service all plan participants are eligible for retirement.

Under different circumstances, we have had occasion to deem a settlement agreement ambiguous and have, therefore, resorted to the rules of contractual construction. For example, in *Flynn,* the term "inheritance," as used in the parties' property settlement agreement, which was incorporated and merged into the final judgment, left doubt whether it included money received as a beneficiary of a trust upon the settlor's death. *Flynn,* 615 A.2d at 120–21. Although, as used in its strictest technical sense, the term "inheritance" excludes trust funds, this Court held that the

trust proceeds should be considered inheritance under the property settlement agreement because the parties' contrary interpretations of the term created an ambiguity, especially in light of the great similarities between a testamentary trust and an inheritance. *Id.* at 120–22. In the case before us, the language "normal retirement date" does not create ambiguity by importing conflicting lay and technical meanings. The implication of "normal retirement date" is clear and unambiguous; we are, therefore, bound to give the language its usual and ordinary meaning.

The plaintiff also assigns error to the Family Court's reliance on *Furia I* and *Janson* to order a retroactive award against the husband. The record reveals that the judgment, entered April 30, 2002, and the hearing justice's bench decision both cite *Furia I* and *Janson* as supporting authority. Our review of the Family Court's limited discussion of *Furia I* and *Janson* satisfies us that the hearing justice properly relied upon these holdings in rendering his decision.

In *Furia I,* the Family Court sought to craft an equitable distribution of the parties' marital assets and certified a question to this Court about an allocation of the wife's pension plan between the parties. *Furia I,* 638 A.2d at 550. Under the wife's pension plan and controlling law, the wife was eligible for retirement but would not collect her pension until she actually retired. *Id.* This Court determined that, under G.L.1956 § 36–10–9, the non-participating spouse has no right to receive pension benefits pursuant to a qualified domestic relations order before the retirement date of the employee/spouse.[3] *Furia I,* 638 A.2d at 553.

---

3. General Laws 1956 § 36–10–9 provides in pertinent part:

"Retirement of a member on a service retirement allowance shall be made by the retirement board as follows:

However, "the employee/spouse should not unilaterally deprive the nonemployee/spouse of his or her property if the Family Court decides to award a portion of the pension to the nonemployee/spouse." *Id.* We answered the Family Court's certified question by holding that "depending on the equitable distribution by the Family Court, [the husband] may not have to wait until [his former wife] retires to begin collecting the value of the benefits he would receive if she did retire." *Id.*[4]

In *Janson*, the wife was entitled to receive 40 percent of her husband's pension under the parties' settlement agreement. However the agreement and the Family Court's order were silent about when she would begin receiving her share. *Janson*, 773 A.2d at 904. We held that the wife was entitled to the value of her portion of the husband's monthly pension benefits payments from the date when he became eligible to retire. *Id.* at 905. We concluded that, in the absence of a clear agreement about the distribution of pension benefits, under our holdings in *Furia I* and *Furia v. Furia*, 692 A.2d 327 (R.I. 1997) (per curiam) (*Furia II*), the trial justice was vested with the authority "to effectuate an equitable distribution of this benefit by awarding the wife her equivalent share of the monthly pension payments that the husband would have re-

ceived if he had retired * * * when he was initially eligible to do so." *Janson*, 773 A.2d at 904.

In this case, we agree with the Family Court's conclusion that:

"[This] decision is a lot less difficult than the decisions in *Janson* or *Furia [I]* because in the Andrukiewicz case it's clear from the marital settlement agreement that * * * Paul Andrukiewicz had the obligation to pay to his former wife Georgia the sum of $583 each and every month beginning the first month after he was eligible for his normal retirement date."

Because the Town of Coventry does not have a mandatory retirement age, the Family Court justice's finding that the husband's "normal retirement date" was the date the husband was eligible to retire was well supported by our caselaw and the terms of the agreement.

■ The husband argues that even if Georgia was entitled to receive payments as of March 1, 1996, the Family Court erred by refusing to apply the doctrine of laches and deny retroactive payments to the wife. The husband contends that, notwithstanding the right to receive the monthly payments as of March 1, 1996, the wife delayed seeking to enforce the agreement until May 14, 2001, and now, Paul

---

(1) Any member may retire upon his or her written application to the retirement board as of the first day of the calendar month in which the application was filed; provided, the member was separated from service prior thereto * * * and provided further that the member on his or her retirement date * * * regardless of age, has completed twenty-eight (28) years of total service."

4. In *Furia v. Furia*, 692 A.2d 327, 328 (R.I. 1997) (per curiam) (*Furia II*), the wife appealed the Family Court's allocation of her pension. Based upon the holding in *Furia I*, the Family Court awarded the husband a lump

sum equal to one-half of the approximately $450,000 actuarial value of the plaintiff's pension if she had retired in December 1995 and survived her anticipated life expectancy. *Id.* at 329. This Court rejected this distribution because it would "result in an inequitable distribution of [wife's] actual pension benefits." *Id.* Such an arrangement would allow the husband to receive one-half of the estimated value of plaintiff's lifetime benefit, although the wife could collect very little or never collect any actual pension benefits depending upon the corresponding dates of her retirement and death. *Id.*

argues, the wife's delay serves as an equitable bar to her claim.

 "[T]he application of the defense of laches is generally committed to the discretion of the trial justice." *O'Reilly v. Town of Glocester*, 621 A.2d 697, 703 (R.I.1993). We will not reverse the trial justices decision on what constitutes laches on appeal "unless it is clearly wrong." *Arcand v. Haley*, 95 R.I. 357, 364, 187 A.2d 142, 146 (1963).

 "Laches is an equitable defense that involves not only delay but also a party's detrimental reliance on the status quo." *Adam v. Adam*, 624 A.2d 1093, 1096 (R.I.1993). To sustain a defense of laches, first the husband must establish "negligence on the part of the [wife] that leads to a delay in the prosecution of the case. Second, this delay must prejudice the [husband]." *O'Reilly*, 621 A.2d at 702. In addition, "[i]t is well settled that this court will consider on appeal only those issues that have been properly raised and presented at trial." *Montecalvo v. Mandarelli*, 682 A.2d 918, 926 (R.I.1996) (citing *Fiske v. MacGregor, Division of Brunswick*, 464 A.2d 719, 726 (R.I.1983)).

In *Adam*, 624 A.2d at 1094–95, this Court had occasion to address the applicability of the doctrine of laches in the context of the enforcement of a property settlement agreement. In proceedings to collect educational expenses pursuant to the parties' property settlement agreement, eleven years had elapsed between the time the wife enrolled their children in private school and when she sought judicial enforcement of the agreement to collect the husband's share of the expenses. *Id.* Although the husband had agreed to contribute towards their children's educational expenses in the property settlement agreement, he raised the defense of laches. *Id.* at 1095–96. The husband argued that, in reliance on the wife's failure to seek enforcement of the agreement for eleven years, he decided to retire from the Navy and, based on his income, purchased an undeveloped parcel of land. *Id.* at 1096. We rejected the defense of laches, concluding that the husband failed to demonstrate that he was prejudiced. *Id.* The husband's lack of diligence in obtaining employment after his retirement did not entitle him to the defense of laches. *Id.* Further, the wife's delay in bringing suit was excusable based upon her testimony that she spent all her available funds on tuition and could not afford an attorney. *Id.*

Here, the husband did not raise the defense of laches during the hearing before the trial justice, nor did he raise the wife's negligent delay of the prosecution of this case or establish that he was prejudiced by his purported reliance on the status quo. As was the case in *Adam*, the husband has failed to demonstrate detrimental reliance on the status quo because he elected to withhold payments from the wife. Therefore, any damage caused by this retroactive award ultimately stems from the husband's own conduct. Although plaintiff raised the defense of laches in a post-trial memorandum, as an apparent afterthought after the close of evidence, plaintiff's opportunity to present evidence concerning the defense of laches already had expired. This issue has not properly been preserved for appellate review and, therefore, we decline to reach it.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Family Court. The record shall be remanded to the Family Court.

Justice FLAHERTY did not participate.