### Michael D. BLOSCHICHAK

v.

### Dianne F. BLOSCHICHAK.

### No. 2010–182–APPEAL.

Supreme Court of Rhode Island.

Feb. 6, 2012.

Arthur E. Chatfield.

William F. Holt.

### ORDER

In a post-final judgment divorce proceeding, the Family Court ordered the plaintiff, Michael D. Bloschichak, to pay the defendant, Dianne F. Bloschichak, a monthly sum equal to the portion of the plaintiff's retirement benefits that the defendant would have received had the plaintiff retired on the first date that he was eligible to do so. In the same order, the plaintiff also was ordered to pay an arrearage of $26,133.22 within 120 days of the date of the order. The plaintiff appeals from this Family Court order, arguing that the trial justice erred in failing to consider the equities in regard to the plaintiff's ability to pay the arrearage. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After reviewing the record and considering the parties' written and oral submissions, we are satisfied that this appeal may be decided without further briefing or argument. For the reasons set forth herein, we vacate the order of the Family Court to the extent that it required the plaintiff to pay the entire arrearage within 120 days of the order without first considering his ability to comply therewith, and we affirm the order in all other respects.

Michael and Dianne[1] had been married for eleven years when Michael filed a complaint for divorce on March 25, 1997. The parties mutually consented to a property settlement agreement (settlement agreement) on June 20, 1997, which was approved by the court and incorporated in the decision pending entry of final judgment, but was not merged therein.[2]

Michael had a vested interest in a pension with the State of Rhode Island Employees Retirement System (retirement system); and, under the settlement agreement, the parties agreed that Dianne would receive a one-half interest in this pension from the dates of November 20, 1982, through June 25, 1997.[3] The parties

1. We refer to the parties by their first names only to avoid confusion; we intend no disrespect.

2. The portions of the settlement agreement that set forth the obligations of the parties for child support, custody, and visitation were merged.

3. Although Michael and Dianne were married for only eleven years, they agreed that "the start date for pension calculation purposes would be November 20, 1982," which was the date that Michael and Dianne first began living together.

further agreed that Dianne would not accrue any additional interest in Michael's retirement plan after June 25, 1997, and that "[a]ll further increments to the plan shall be solely the property of [Michael]." To that end, paragraph eleven of the settlement agreement states, in relevant part, that "[Dianne] shall be included as an Alternative Payee by said Retirement Plan as soon as is administratively practicable."

A hearing on the merits of the divorce was held on June 25, 1997, at which Michael was represented by privately retained counsel and Dianne proceeded *pro se*. Dianne testified at the hearing that she understood that she was entitled to have an attorney represent her, that she previously had reviewed the settlement agreement with independent counsel, and that she was comfortable proceeding *pro se*. Both parties testified at the hearing that they had reviewed the settlement agreement and believed it to be a fair and reasonable distribution of their marital assets and of their rights and obligations to each other in the future.[4] On the same day as the hearing, a qualified domestic relations order (QDRO) also was entered by the Family Court, which stated in relevant part: "Payments shall be made monthly to the Alternate Payee [Dianne] after the retirement of the Participant [Michael]."

A Family Court final judgment was entered on June 3, 1998. On February 26, 2009, more than ten years after the final judgment had entered, the Family Court granted Dianne's motion to enter an amended QDRO, which expanded upon the original settlement agreement. The amended QDRO specified:

"Fifty Percent (50%) of the Participant's accrued benefits in the Plan, based on the period of November 20, 1982 through June 25, 1997, is to be paid to the Alternate Payee, at such time and in such manner permitted by and subject to the rules governing the Plan and any other applicable laws or regulations.

"* * *

"The Participant shall not take any actions, affirmative or otherwise, that can circumvent the terms and provisions of this Qualified Domestic Relations Order, or that could diminish or extinguish the rights and entitlements of the Alternate Payee as set forth herein. Should the Participant take any action or inaction to the detriment of the Alternate Payee, the Participant shall be required to make sufficient payments directly to the Alternate Payee to the extent necessary to neutralize the effects of Participant's actions or inactions and to the extent of Alternate Payee's full entitlements hereunder."

On April 21, 2009, Dianne filed a motion with the Family Court to enforce the settlement agreement.[5] In this motion, Dianne alleged that the date Michael first was eligible to retire had passed, that he had not yet retired, that the settlement agreement is "silent as to the start date of payments" to be made to her, and that

---

4. Michael additionally testified that he had reviewed the settlement agreement "extensively" with his attorney.

5. Dianne was represented by privately retained counsel when she filed the motion to enforce the settlement agreement, as well as at all later proceedings. At the May 19, 2009 hearing, Michael proceeded *pro se*. The trial justice, however, continued the hearing to enable the parties to produce exact dates and "hard numbers" surrounding Michael's retirement and his pension. Before concluding the May 19, 2009 hearing, the trial justice stated to Michael: "If I were you, I'd get a lawyer, because you need one." Michael was represented by privately retained counsel at the July 29, 2009 hearing, as well as at all later proceedings.

Michael's continued employment past the date he first was eligible to retire has "deprived [her] of her interest in a marital asset." Evidentiary hearings were held on May 19, 2009, and July 29, 2009.[6] In light of "evidence elicited" on the latter date, Michael filed a motion to vacate on August 24, 2009,[7] alleging that his original divorce attorney "was paid by [Dianne], * * * therein creating a situation where an inherent conflict existed as to [his lawyer's] loyalties to zealously advocate on behalf of the client." Michael additionally averred that his attorney "had a complete breach of the ethics code" because he did not require the parties to sign each and every page of the settlement agreement and because the divorce hearing transcript was devoid of the parties' specific acknowledgment concerning the exact percentage of retirement benefits that Dianne was to receive.

The parties filed post-hearing memoranda, and on December 28, 2009, the trial justice issued a written decision. In his decision, the trial justice noted that the settlement agreement "is silent as to the date [Dianne] commences receiving benefits." Then, citing precedent from this Court, he determined that "it would be inequitable to make [Dianne] wait for her benefits, when all benefits being accrued after the date of the hearing on the merits inure to the sole benefit of [Michael] pursuant to the [settlement agreement]." The trial justice held that Michael first was eligible to retire in June 2004, and that Michael currently was in arrears $26,133.22. Consequently, the trial justice granted Dianne's motion to enforce the settlement agreement, ordering Michael to make monthly payments of $444.35[8] and also to pay the arrearage amount of $26,133.22 "within 120 days of this Order." An order to this effect was entered on February 23, 2010, from which Michael timely appealed.[9]

During his oral argument before this Court, Michael candidly acknowledged that the only viable issue on appeal is the propriety of the trial justice's order that Michael pay $26,133.22 within 120 days of the order. He argues that the trial justice erred by not first taking into consideration his ability to pay the lump sum amount before ordering him to do so. Moreover, Michael asserts that nothing in the settlement agreement specified when he was to begin making payments to Dianne for her share of his retirement benefits. Thus, he argues, because Dianne waited approximately four and a half years from the date he first was eligible to retire to file a motion to compel payments, he was hit "out of the blue" with "a $26,000 bill" and only "ha[d] 120 days to come up with" that amount; a predicament that Michael characterizes as an "inherent injustice."

---

6. The matter was continued once again at the conclusion of the July 29, 2009 hearing; however, the transcript from the subsequent hearing was not produced to this Court on appeal.

7. Michael did not identify precisely what he was seeking to vacate, nor did his motion contain a prayer of relief.

8. The monthly payment of $444.35 represents the monthly sum Dianne would have received had Michael retired on the date he was first eligible to do so, as determined by the trial justice. At oral argument before this Court, there was no dispute that Michael had been making this monthly payment since being ordered to do so.

9. The trial justice also denied Michael's motion to vacate for failure to file a motion for relief from judgment within one year of the entry of the final judgment under Rule 60 of the Family Court Rules of Procedure for Domestic Relations. Alternatively, the trial justice denied the motion for a complete failure of proof.

In the case at bar, we perceive no error in the trial justice's determination that Dianne should have begun receiving her benefits in Michael's retirement plan as of the date he first was eligible to retire. We likewise find no error in the trial justice's order that Michael pay Dianne a monthly sum of $444.35 or that he pay an arrearage of $26,133.22. As the trial justice recognized, such a ruling is consistent with this Court's precedent. *See Hagopian v. Hagopian*, 960 A.2d 250, 253 (R.I.2008) (finding no error with the trial justice's equitable distribution of the marital portion of the retirement benefits because it "was based on the totality of the circumstances presented by the evidence" and on the reasoning that "a grave injustice could occur" if the contributing spouse was able to unilaterally control the distribution date of his pension by not retiring when first eligible to do so); *Hagopian v. Hagopian*, 916 A.2d 761, 763 (R.I.2007) (mem.) (holding that the decision of whether "the marital portion of a contributing spouse's pension benefits [should be paid] at the time he or she becomes eligible for retirement * * * rests within the sound discretion of the trial justice in deciding the equitable distribution of the marital estate"); *Furia v. Furia*, 638 A.2d 548, 553 (R.I.1994) (holding that a "nonparticipatory spouse is not necessarily required to wait to collect the value of the pension benefits but is required to wait until the employee/spouse retires in order to receive actual pension benefits").

In addition to ordering Michael to make monthly payments, the trial justice required that Michael pay an arrearage of $26,133.22. We recognize that the arrearage Michael was ordered to pay represents money that would have been paid to Dianne by the retirement system had Michael retired when he first was eligible to do so, but which money never was, in fact, received by either Dianne or Michael. It is our opinion that, under these circumstances, the trial justice should have considered Michael's ability to pay before ordering him to make a lump sum payment of $26,133.22 within 120 days of the February 23, 2010 order.

We affirm the order, therefore, in all respects, except for the mandate that Michael pay the full arrearage of $26,133.22 within 120 days of the date of said order. Accordingly, we remand the papers with directions that the Family Court conduct a hearing on Michael's ability to pay the arrearage, and that it fashion an appropriate payment schedule consistent with Michael's ability to pay.